No. 83-376

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN THE MATTER OF DECLARING

M.E.M., JR., a youth in need of care.

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Hill,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Mark A. Suagee, Havre, Montana

For Respondent:

Glen Driveness, Deputy County Attorney, Havre,
Montana
Brian Lilletvedt, Havre, Montana
Theodore Thompson, Havre, Montana

Submitted on Briefs: December 15, 1983

Decided: April 9, 1984

Filed: APR 9 - 1984

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The mother of M.E.M. appeals from the order of the Twelfth Judicial District Court, Hill County, terminating parental rights of both parents and awarding permanent legal custody to the Department of Social and Rehabilitation Services. We affirm.

The dispositive issue is whether alleged violations of the Indian Child Welfare Act in temporary legal custody proceedings invalidate later permanent legal custody proceedings which comply with the Indian Child Welfare Act.

The child subject to this action was born March 21, 1981. Because the child and both parents are enrolled members of the Gros Ventre Tribe of the Fort Belknap Indian Reservation, the child is an Indian child for purposes of the Indian Child Welfare Act, 25 U.S.C. §1903(4). The child was born in Havre, Montana and has resided there since his birth. Both parents also resided in Havre, Montana at all times relevant to the proceedings.

The Hill County Welfare Department initially became involved in this case in November of 1980 when the mother was pregnant with the child. Marsha Brunett, a social worker from the Hill County Welfare Department became involved because the parents had previously had a child permanently removed and because the hospital and the W.I.C. (Women, Infants and Children) program had reported that the mother had been drunk when she arrived for appointments. The Department continued its involvement because the mother continued to drink heavily during her pregnancy. The child weighed only four pounds when born and remained in the hospital for two weeks due to his low birth weight.

After unsuccessfully attempting to arrange for the baby to go home with the parents, a Petition for Temporary

2

Investigative Authority was filed on April 6, 1981, and an ex parte order was issued on April 7, 1981. Because the parents continued to drink heavily and had neither a permanent residence nor adequate food for the baby, a Petition for Temporary Legal Custody was filed on April 9, 1981. The child was released from the hospital and was placed in foster care.

On April 10, 1981, the parents were served with notice of a hearing scheduled for April 20, 1981 and a copy of the Petition for Temporary Legal Custody. Marsha Brunett orally notified them of the hearing date on at least two other occasions.

On April 20, 1981, the hearing regarding temporary custody was held, but neither parent appeared. On April 22, 1981, the court entered its order finding the child a youth in need of care and awarding temporary legal custody to the Department of Social and Rehabilitation Services (the Department).

During the next two years the Department attempted to work with the parents to prepare them to regain custody of their child. A treatment plan was prepared and signed by both parents on March 10, 1982. A second plan was developed and signed by the mother on September 21, 1982. After the parents agreed to the plans, they were approved by the District Court. These treatment plans primarily required that the parents obtain alcoholism treatment or counseling and that they establish a permanent residence. However, both parents continued to drink heavily over the next two years and neither parent established a permanent residence. On December 8, 1982, the court continued the Department's temporary legal custody based upon written stipulation of both parents.

M.E.M. has been in foster care since his birth. He is developmentally delayed in speech and language, gross motor skills and cognitive skills. He requires a special training program designed to address these developmental delays.

Both parents were allowed liberal visitation with M.E.M. during his foster care placement, although the mother allegedly visited the child only four times in 2-1/2 years and the father less.

On March 14, 1983, a petition requesting termination of parental rights and granting of permanent legal custody of M.E.M. to the Department was filed with the court. The parents were served personally and were provided written notice by means of certified mail, return receipt requested. Counsel was appointed for each parent.

On March 23, 1983, the mother filed a motion to dismiss on the basis of alleged violations of the Indian Child Welfare Act in prior proceedings. The motion was denied. The mother then filed a motion to transfer the case to tribal court, but the tribal court declined jurisdiction.

On May 4, 1983, the termination hearing was held. Neither parent attended, although their attorneys stated the parents had been notified of the hearing. After testimony from an experienced social worker, a certified dependency counselor, a physician and a family trainer, the court entered its Findings of Fact and Conclusions of Law on May 27, 1983, terminating parental rights and awarding permanent legal custody to the Department. The mother appeals.

Appellant alleges five specific violations of the Indian Child Welfare Act, 25 U.S.C. §1901, et seq., in the temporary legal custody proceedings and argues that these violations require invalidation of both the temporary and permanent custody proceedings. She does not contend that there were

4

violations of the Act in the permanent custody proceedings, but argues that the District Court improperly relied upon invalid prior proceedings in terminating her parental rights. We disagree.

For purposes of resolving this issue, we will assume _arguendo_ that the alleged violations occurred, although we do not so hold. Because we conclude that the alleged violations of the Act in the temporary custody proceedings would not require invalidation of the permanent custody proceedings, we need not decide whether the Act was violated.

The Indian Child Welfare Act provides in part:

> "Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title." 25 U.S.C. §1914.

This section provides for invalidation of an action which violates the provisions of the Act. Assuming that the violations alleged by appellant occurred, she would be entitled to invalidation of the temporary custody proceedings. However, this section does not provide for invalidation of a valid separate action because of an invalid prior one. On the facts of this case, we decline to extend the language of this section to provide such a remedy.

The temporary and permanent custody proceedings in this case were separate actions resulting in court orders granting different forms of relief. They were initiated by separate petitions and were required to follow separate statutory guidelines. See sections 41-3-401, et seq., and 41-3-601, et seq., MCA.

In terminating appellant's parental rights, the District Court did not rely upon the prior temporary custody

proceedings. The court noted the temporary custody proceedings in its findings of fact, but emphasized separate testimony from the permanent custody hearing regarding the condition of the child and the parents' ability to care for the child. The permanent custody hearing involved entirely different witnesses and was conducted by a different judge than the temporary custody proceeding. The court heard testimony from various witnesses, including experts, and concluded that M.E.M. was a youth in need of care. This conclusion was based upon the parents' alcoholism, their refusal to respond to or seek alcoholism treatment, their inability to care and provide for the child, the likelihood of serious emotional or physical damage to the child, and other similar matters.

Further, the temporary custody proceedings were not a legal prerequisite to termination of parental rights. The State may file a petition for permanent legal custody regardless of whether a temporary custody order has been granted. See section 41-3-401(10) and 41-3-601, et seq., MCA. The record is devoid of any suggestion that the court relied upon the temporary custody order in termination of appellant's parental rights. Rather, the District Court followed the separate requirements of section 41-3-609(1)(c), MCA. The record contains overwhelming evidence apart from the temporary custody order to support the findings required by this section and made by the court. Section 41-3-609(1)(c), MCA does not require reliance upon a prior temporary custody order nor did the court in fact rely upon one here.

Appellant further contends that the court improperly relied upon the parents' failure to comply with court-approved treatment plans. She argues that these

treatment plans were part of the temporary custody proceedings and were therefore invalid because of the alleged violations of the Act. We disagree.

The treatment plans were prepared, executed and approved by the court a year or more after the temporary custody orders were granted and were approved by the court without specific relationship to any proceeding. The treatment plans were neither required nor suggested by the temporary custody order. Court-approved treatment plans are not a prerequisite to a temporary custody order, but they were a prerequisite to termination of parental rights in this case. See sections 41-3-401, et seq., and 41-3-609(1)(c)(i), MCA. The treatment plans were not a part of the temporary custody proceedings and the District Court did not err in relying upon the parents' failure to comply with the treatment plans as an additional basis for terminating parental rights.

In affirming the order of the District Court, we emphasize that the permanent custody proceedings fully complied with the provisions of the Act. Individual counsel was appointed to represent the child and each parent, and notice was given to all concerned parties. Jurisdiction was offered to the tribal authorities but was declined. Even though the parents were given repeated notice of the proceedings by various individuals, including their attorneys, they failed to appear or express any interest in regaining custody of their child. Despite the diligent efforts of local welfare personnel, the parents refused to seek or respond to treatment for alcoholism, which so far as the record shows was the principal obstacle to their ability and desire to care for their child.

Throughout her brief, appellant has emphasized the policies of the Indian Child Welfare Act to promote the

7

stability and security of Indian tribes and families and to protect the best interests of the Indian child. See 25 U.S.C. §1902. We recognize these and other policies of the Act and encourage the district courts to diligently follow the requirements of the Act. These objectives have been pursued in this case as far as permitted by the circumstances, but the conduct of the parents does not allow a continued family relationship. The District Court has therefore ordered that the child be placed with his extended Indian family, other members of the child's tribe, or other Indian families, as required by the Act. 25 U.S.C. §1915(a). The child's tribe has expressed a desire to arrange such a placement. The Act's policy of promoting tribal stability will therefore be carried out as far as the tragic facts of this case permit. To further prolong this proceeding would not be in the child's best interest.

We hold that, under the facts of this case, alleged violations of the Indian Child Welfare Act in temporary legal custody proceedings do not invalidate the later permanent custody proceedings. In light of this conclusion, appellant's other issues are without merit. The District Court did not err in terminating parental rights.

The order of the court is affirmed.

Justice

We concur:

_John Conway Harrison_

_Frank B Morrison_

_John C Sheehy_

_L. C. Gulbrandson_
Justices

9