In the Interest of J.W., B.W., T.W., K.W.–H., and R.W.–H., Minor Children,

G.W., Mother, Appellant.

No. 94–0745.

Court of Appeals of Iowa.

Jan. 23, 1995.

Teresa O'Brien, Sioux City, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Judy A. Sheirbon, Asst. Atty. Gen., and Rhoda M. Tenuta, Asst. County Atty., for appellee-State.

Debra Y. Lulf, Sioux City, guardian ad litem, for minor children.

Heard by DONIELSON, C.J., and HAYDEN and CADY, JJ.

CADY, Judge.

Grace, an enrolled member of the Omaha tribe and eligible member of the Santee Tribe, is the mother of five children. They are John, born April 3, 1982, Bron, born June 2, 1986, Tran, born January 5, 1988, Kayla, born June 25, 1990, and Rion, born May 19, 1991. The putative father of John and Tran is John T. Lauro is the putative father of Bron. David is the father of Kayla and Rion. Grace appeals the trial court's order terminating her parental rights to her five children. She asserts the State and trial court failed to follow various procedural requirements of the Indian Child Welfare Act of 1978 (ICWA), 25 U.S.C. § 1901–63. Upon review, we affirm the trial court's termination order.

The children first came to the attention of the Department of Human Services (DHS) in June 1989 when Grace and David went to South Dakota and left Tran and Bron with a thirteen-year-old baby-sitter. When Grace did not return after two days the baby-sitter contacted the police and Tran and Bron were placed in emergency foster care. The Omaha Indian Tribe was orally notified of the children's removal two days later. Grace subsequently received a substance abuse evaluation and was diagnosed alcohol dependent. At an August 1989 hearing, the parties stipulated that John, Tran, and Bron were children in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(b), (c)(2), and (n). John was also placed in emergency foster care at this time.

The two youngest children were removed from Grace's care shortly after their birth. When Kayla was born in June 1990, Grace had a blood alcohol content of .202. Kayla was placed in emergency foster care upon her release from the hospital and in August was adjudicated CINA pursuant to Iowa Code section 232.2(6)(n). At a September review hearing, the children were ordered to continue in foster care. Grace and David were granted visitation and ordered to undergo psychological evaluations and substance abuse treatment. Visitation was conditioned on the parents' proof of attending Alcoholics Anonymous and demonstrating a consistent lifestyle for at least four weeks.

In February 1991, visitation was suspended due to Grace and David's inability to comply with these requirements.

Rion was born in May 1991, and placed in emergency foster care upon his release from the hospital. The Omaha Tribe received written notice of the removal the day after the hearing. Rion was adjudicated CINA in July. At a September review hearing, the children were ordered to continue in foster care and DHS indicated it would seek termination of parental rights.

In November 1991, the State filed its first petition for termination of parental rights. The Omaha Tribe received insufficient notice of the termination proceedings. After the February 1992 termination hearing, the district court found that the children would likely suffer serious physical or emotional damage if returned to Grace's or David's custody. The court ordered Grace's parental rights to John, Tran, Bron, Kayla, and Rion and David's parental rights to Kayla and Rion terminated. The court further ordered the parental rights of John T. and Lauro and any unknown biological fathers terminated.

Grace and David appealed. In November 1992, the Omaha Tribe filed a motion to intervene. We granted the Omaha Tribe's motion to intervene, however, the Omaha Tribe failed to file a brief or participate further in the appeal. In April 1993, we reversed and remanded the case. We determined the Omaha and Santee Tribes were not given proper notice of the termination proceedings. See In re J.W., 498 N.W.2d 417 (Iowa App.1993).

In May 1993, a second petition for termination was filed. By this time, the children had become enrolled members of the Omaha Tribe. The Omaha Tribe and the Santee Tribe were both given proper notice of the petition.

By June 1993, both David and Grace had filed applications requesting reinstatement of visitation. At a July 1993 hearing, the court approved an agreement for visitation entered into between Grace, David, the Omaha Tribe and DHS. However, prerequisites for visitation were not fulfilled. Although no visitation pursuant to the agreement ever oc-

curred, about a week prior to the termination hearing John met with Grace in the presence of his therapist.

In December 1993, the Omaha Tribe filed a motion, which Grace later joined, to transfer jurisdiction and dismiss the case. A hearing on the pending motions and termination petition was held in January. Grace attended the first day of the hearing but was absent the remaining three days. David was absent throughout the entire hearing.

DHS caseworker Cathy Gray testified that all of the children except John had probable fetal alcohol effects and Bron had possible microcephaly. The four youngest children were considered special needs children and required a highly structured environment. She further explained that the four oldest children had been living together in one foster home. Rion was living in the foster home of the daughter and son-in-law of the older children's foster parents and had almost daily contact with his siblings. Both sets of foster parents expressed a willingness to adopt the children.

The witnesses who testified as ICWA qualified experts at the termination hearing included: DHS caseworkers Ms. Vogel and Ms. Tope, Mr. Blackbird, from the Omaha Tribe, and Dr. Evans, an expert obtained by the guardian ad litem. Vogel and Tope, who had also testified at the previous termination hearing, recommended termination of parental rights. Blackbird testified that he knew of no Native American homes available for the children and that none of Grace's relatives had offered their homes as placement options. Dr. Evans testified that he did not think the children could be returned to Grace or David's custody.

Mr. Jacobson, John's therapist, testified that John cried inconsolably after the meeting with Grace and stated that there was little bonding between them. Jacobson did not believe the children could be returned to Grace without being likely to suffer serious emotional or physical damage. The court spoke to John in camera. John indicated he would like to remain with his foster parents and that he thought the other children felt the same way.

The district court found that there was good cause not to transfer jurisdiction of the case to the tribal court and denied the motions for transfer. The court further found that it was in the children's best interest to terminate parental rights. Accordingly, the court ordered Grace's parental rights terminated pursuant to Iowa Code section 232.116(1)(b), (d), (e), (g), (h) and (k) and David's parental rights terminated pursuant to Iowa Code section 232.116(1)(b), (d), (g), (h) and (k). The court also terminated the parental rights of John T., Lauro, and any unknown biological fathers of the children.

Grace appeals. She first argues that no good cause existed to prevent transfer of the case to the tribal court. Second, Grace contends the State removed Kayla and Rion from her custody and continued the placement of the older children without establishing by clear and convincing evidence or the testimony of qualified experts that the children would likely suffer serious emotional or physical damage in her custody as required by the ICWA. Third, Grace argues that the ICWA guidelines regarding foster care and pre-adoption placement were not complied with because the State made little or no effort to place the children in an Indian home. Finally, Grace argues that her alcoholism is not a sufficient reason to terminate her parental rights.

## I. Scope of Review

Our review of proceedings to terminate parental rights is de novo. *In re R.L.F.*, 437 N.W.2d 599, 600 (Iowa App.1989). We accord weight to the fact findings of the trial court, especially when considering the credibility of the witnesses the court has heard and observed first hand, but we are not bound by them. *Id.*; Iowa R.App.P. 14(f)(7). Our primary concern is the best interests of the child. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We look to both the child's long-range and immediate interests. *Id.*

In the present case, the children are members of the Omaha Tribe. The Iowa statutory and case law is therefore modified by the provisions of the ICWA. *See R.L.F.*, 437 N.W.2d at 601.

## II. The Indian Child Welfare Act

Congress enacted the ICWA in response to the threat to the integrity of Indian culture caused by the unwarranted removal of large numbers of Indian children from their families and tribes by non-tribal public and private agencies and their placement in non-Indian foster and adoptive homes. 25 § U.S.C.1901. In the Act, Congress announced a two-pronged national policy: "to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families." *Id.* at § 1902. To this end, the Act imposes strict procedural standards for the removal of Indian children from their families and their placement in foster and adoptive homes. *Id.; See* Russell L. Barsh, *The Indian Child Welfare Act of 1978: A Critical Analysis,* 31 Hastings L.Rev. 1287, 1287 (1980).

## III. Transfer of Jurisdiction

■ The core of the ICWA is its jurisdictional provisions over child custody proceedings. *In re J.L.P.,* 870 P.2d 1252, 1256 (Colo. App.1994). The Act provides a mechanism for tribes to exert their jurisdiction beyond reservation boundaries to child custody actions involving off-reservation tribal members. 25 U.S.C. § 1911(b) requires the state to transfer "proceeding[s] for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing with the reservation of the Indian child's tribe" to the jurisdiction of the tribe "absent good cause to the contrary."

Good cause is not defined in the ICWA. The Bureau of Indian Affairs (BIA), however, has issued guidelines for determining whether good cause exists.

(a) Good cause not to transfer the proceedings exists if the Indian child's tribe does not have a tribal court as defined by the Act to which the case can be transferred.

(b) Good cause not to transfer the proceeding may exist if any of the following circumstances exist:

(i) The proceeding was at an advanced stage when the petition to transfer was received and the petitioner did not file the petition promptly after receiving notice of the hearing.

(ii) The Indian child is over twelve years of age and objects to the transfer.

(iii) The evidence necessary to decide the case could not be adequately presented in the tribal court without undue hardship to the parties or the witnesses.

(iv) the parents of a child over five years of age are not available and the child has had little or no contact with the child's tribe or members of the child's tribe.

(c) Socio-economic conditions and the perceived adequacy of tribal or Bureau of Indian Affairs social services or judicial systems may not be considered in a determination that good cause exists.

(d) The burden of establishing good cause to the contrary shall be on the party opposing the transfer.

44 Fed.Reg. 567,583, 67,591 (1979). The guidelines were not published as regulations and are not binding. 44 Fed.Reg. 67,584; *See In re Adoption of T.R.M.,* 525 N.E.2d 298, 307 (Ind.1988) (citing *Batterton v. Francis,* 432 U.S. 416, 424, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448, 456 (1977). We have, however, previously applied these guidelines in deciding whether good cause exists not to transfer jurisdiction to tribal courts. *See In re J.R.H.,* 358 N.W.2d 311, 317 (Iowa 1984). Ultimately, the determination whether good cause not to transfer exists is made on a case-by-case basis, after a careful consideration of all the circumstances of the case. *In re Wayne R.N.,* 107 N.M. 341, 343, 757 P.2d 1333, 1335 (App.1988).

In this case, Grace asserts the trial court violated section 1911(b) when it found good cause not to transfer the termination proceedings to the tribal court. We disagree.

These facts sufficiently support the trial court's conclusion that the proceedings were at an advanced stage when the Tribe petitioned to transfer and the petition was not filed promptly after receiving notice of the proceedings.[1] *See Wayne R.N.,* 757 P.2d at

---

1. The ICWA also enables Grace to request transfer to the tribal court. 25 U.S.C. § 1911(b).

Grace has been involved in these proceedings and represented by council since 1989.

1336; *In re Maricopa County Juvenile Action*, 171 Ariz. 104, 110, 828 P.2d 1245, 1251 (App.1991); *In re Robert T.*, 200 Cal.App.3d 657, 664–65, 246 Cal.Rptr. 168, 172–74 (1988).

Additionally, transfer would result in undue hardship to the parties and the witnesses. The bulk of the evidence is located in Iowa and the majority of the witnesses and parties reside in Iowa. The tribal court lacks the ability to subpoena witnesses outside its jurisdiction. Furthermore, the State, through its social agencies, has had extensive contact with the family unit for over four years. In comparison, the Tribe's contact has been limited and sporadic. *See In re N.L.*, 754 P.2d 863, 869 (Okl.1988) (holding good cause to deny a transfer may be found where almost all of the parties and witnesses reside in the county of the state court and have no contact with the tribal court); *J.R.H.*, 358 N.W.2d at 317 (finding good cause to deny transfer where the State had extensive contact with the family unit, and the majority of the evidence and witnesses were in same state as the state court).

Lastly, the Tribe had representatives present at the termination hearing. These representatives were able to advance the interests of the Tribe and protect against the possibility of state court bias against tribal culture. The Tribe's attorney participated in the proceedings and case workers from the Tribe and Indian Youth of America testified. Thus, the possibility that Grace's rights would be terminated based on conduct or values that would have been acceptable to the Tribe was minimized. Under these circumstances, the trial court had good cause to retain jurisdiction. *See Wayne R.N.*, 107 N.M. at 344, 757 P.2d at 1336.

### IV. Section 1914

▮ Grace next asserts the termination should be reversed because the court violated ICWA section 1912(e) when it placed the children in temporary foster care and continued their placement at subsequent disposi-

tional hearings without the testimony of qualified expert witnesses.

Grace relies on section 1914 to support her claim. Section 1914 provides a parent "may petition any court of competent jurisdiction to invalidate [a foster care placement or termination] upon a showing that such action violated any provision of sections 1911, 1912, and 1913...." Thus, Grace requests this court to invalidate the termination proceeding because of an alleged violation in the prior temporary legal custody proceedings. On the facts of this case, we decline to extend the language of section 1914 to provide such a remedy.

Assuming the violations alleged by Grace occurred, she would be entitled to invalidation of the initial temporary custody proceedings. Section 1914, however, "does not provide for invalidation of a valid separate action because of an invalid prior one." *In re M.E.M.*, 209 Mont. 192, 679 P.2d 1241, 1243 (1984); *D.E.D. v. State*, 704 P.2d 774, 782 (Alaska 1985).

When terminating Grace's parental rights the trial court took judicial notice of the prior proceedings with consent of the parties. The court, however, did not rely exclusively on its earlier findings to reach its conclusion to terminate Grace's parental rights. It made specific findings based on testimony of three qualified ICWA experts at the termination hearing. These witnesses each concluded the children were likely to suffer serious physical or emotional damage if returned to their parent's custody.

### V. Foster Care Placement

▮ Grace argues the termination should be overturned for the State's failure to follow ICWA section 1915 guidelines on foster care and pre-adoption placements. Section 1915 of the ICWA requires the trial judge to give preference in foster home placement, "absent good cause to the contrary," to members of the child's extended family, a foster home licensed or specified by the child's tribe, an Indian foster home licensed by an authorized

---

Throughout the various adjudicatory and dispositional hearings she never requested a transfer of jurisdiction. The first time Grace sought a transfer of jurisdiction was when she joined the Tribe's December 1993 motion. We cannot escape the conclusion that Grace's last minute request for a transfer to the tribal court is an effort to manipulate the system after losing her battle in the state court. *See People in Interest of J.J.*, 454 N.W.2d 317, 330–31 (S.D.1990).

non-Indian licensing authority, or an institution for children approved by an Indian tribe or operated by an Indian organization.

Grace, however, provides no authority for her assertion that noncompliance with section 1915 requires reversal of the trial court's termination order. The remedial provisions of section 1914 do not apply to violations of section 1915. Section 1914 specifically applies to violations of sections 1911, 1912, and 1913. *See B.R.T. v. Executive Director of Social Sec. Bd*, 391 N.W.2d 594, 601 (N.D. 1986). (holding "invalidation of a parental rights termination may not be accomplished by showing a violation of the placement preferences in a proceeding brought pursuant to section 1914.").

Moreover, Grace has never made a motion requesting the children be moved from their present foster homes. On the contrary, she has previously indicated she prefers that the children remain together in their present homes rather than being separated in Indian foster homes. Grace's preference is an appropriate consideration in foster home placement. *See* 25 U.S.C. § 1915(c) ("Where appropriate the preference of the ... parent shall be considered....").

### VI. Sufficiency of the Evidence

Finally, Grace challenges the sufficiency of the evidence to support the trial court's termination order. She claims the court erroneously terminated her parental rights merely because she is an alcoholic.

Under ICWA section 1912(f), the state bears the burden of showing "beyond a reasonable doubt" that parental rights should be terminated. After reviewing the evidence, we conclude the State has met this burden.

Grace has a history of chronic alcoholism and unemployment. Throughout this case she has resisted or failed to cooperate with service providers. The four youngest children have probable fetal alcohol effects due to her drinking during pregnancy. Grace has a pattern of leaving her children with inappropriate caretakers and has consistently placed her desire to drink ahead of her children's needs. Although Grace completed an alcohol treatment program in April 1992, she failed to follow through with after care treatment. By her own admission, her alcoholism has prevented her from caring for and visiting her children since their foster care placement in 1991. There are many examples of Grace's lack of interest and instability, including her failure to attend the termination hearing after the first day and her eviction from her apartment during the termination proceedings.

Grace's relationship with David has also contributed to her inability to appropriately parent her children. Their relationship has been marked by David's ongoing physical abuse of Grace. David's most recent arrest for domestic abuse of Grace occurred in September 1993. This abuse has had a negative impact on the children. On one occasion, John began crying uncontrollably after recalling an incident when he witnessed David's abuse of Grace. Additionally, David has a chronic alcohol problem that has led to numerous arrests and criminal convictions.

John, Bron, and Tran have been in foster care since 1989 and Kayla and Rion have been in foster care since their respective births in 1990 and 1991. This is long after the statutory limit. *See* Iowa Code § 232.116(1)(e), (g). "As in so many other similar cases, we cannot ignore the relentless passage of time and the fact that while [Grace] searches for sobriety, her children languish in parentless limbo." *In re R.J.*, 436 N.W.2d 630, 636 (Iowa 1989). We find beyond a reasonable doubt the best interests of these children require termination of Grace's parental rights.

In conclusion, we note the foster parents are willing to adopt these children. We are also cognizant of the provisions and preferences of the ICWA which must be considered in placing these children in adoptive homes.

**AFFIRMED.**