In the Interest of J.D.B., E.D.B., E.C.V., and J.J.B., Minor Children.

A.C.B., Mother, Appellant.

No. 97–1399.

Court of Appeals of Iowa.

July 31, 1998.

Teresa A. O'Brien of Forker & Kanter, Sioux City, for appellant.

Thomas J. Miller, Attorney General, Chris C. Odell, Assistant Attorney General, and Rhoda M. Tenuta, Assistant County Attorney, for appellee State.

Joseph Kertels, Sioux City, guardian ad litem for minor children.

Phyllis Cadue, Indian Child Welfare Advocate, Rosebud, South Dakota, for Rosebud Sioux Indian tribe.

Considered by CADY, C.J., and STREIT and VOGEL, JJ.

VOGEL, Judge.

The mother of four minor children appeals a district court order terminating her parental rights. She argues the district court erred in terminating her parental rights because it failed to apply and follow the provisions of the Indian Child Welfare Act, 25 U.S.C. § 1912, in the prior children-in-need-of-assistance (CINA) proceedings. She also argues there is insufficient evidence the children would be harmed in her care. We affirm.

### Background Facts and Procedural History.

Amanda B. is the mother of four minor children, Jacob, born April 29, 1987, Elise, born June 21, 1990, Emilia V., born December 12, 1991, and Joshua, born April 26, 1993. The children's fathers did not participate in the termination proceedings and do not challenge the termination of their parental rights.

Amanda and the children first came to the attention of the Department of Human Services (DHS) in September 1995, when Amanda left them with relatives and did not return for several days. Amanda has a history of serious substance abuse. The relatives called police who removed the children and

placed them in temporary foster care. At that time, the children were seriously developmentally delayed and suffered from severe head lice. Joshua was suffering from malnutrition, respiratory infection, and conjunctivitis. Emilia also suffered from respiratory infection, and Elise had an ear infection. Joshua was diagnosed as suffering from fetal alcohol effects, and the other three children have possible side effects resulting from Amanda's alcoholism. The State filed an application alleging the children were in need of assistance and asking the juvenile court for an order providing notice, pursuant to 25 U.S.C. § 1912(a), to the parents, Indian Tribes, and the United States Secretary of the Interior that the children may be members of or eligible for membership in an Indian tribe, triggering application of the Indian Child Welfare Act (ICWA). 25 U.S.C. §§ 1901–63. The juvenile court granted the application.

On September 25, 1995, the State filed a motion for hearing on the applicability of the ICWA, stating it had not been provided proof that any of the children were either a member of an Indian tribe or eligible for membership. At the temporary removal hearing on September 26, 1995, Amanda failed to appear, and no evidence was introduced indicating the children were subject to the provisions of ICWA. The juvenile court confirmed the children's custody with DHS and ruled there was no evidence at that time indicating the children were eligible for enrollment in any Indian tribe.

During the adjudicatory hearing on October 17, 1995, Amanda's attorney moved for a continuance because he had just received the file and had not yet met or had any contact with Amanda. Counsel informed the court the children were members of the Rosebud Sioux tribe. The court granted the continuance and requested that counsel provide it with a written confirmation of the children's tribal membership.

On November 1, 1995, the Rosebud Sioux tribe filed a motion to intervene, alleging the children were eligible for membership and ICWA applied. At the rescheduled CINA adjudicatory hearing on December 18, 1995, the Rosebud Sioux tribe failed to appear or submit any further evidence of the children's tribal eligibility. The court adjudicated the children to be in need of assistance, but continued the hearing on the motion to intervene and ordered the tribe to submit any evidence regarding the children's potential tribal membership.

Neither Amanda nor the Rosebud Sioux appeared at the dispositional hearing held on February 16, 1996. Amanda did, however, enter chemical dependency treatment and exercised visitation with the children in February 1996. She has not seen her children since that time. Although Amanda was offered numerous services by DHS, she continually failed to attend classes or complete substance abuse treatment. Although the tribe provided the court with some evidence regarding the children's tribal membership, the court concluded the information was incorrect, continued the hearing on the motion to intervene until August 16, 1996, and ordered the tribe to submit accurate information on or before August 12, 1996.

The Rosebud Sioux Tribe failed to appear at the August 1996 hearing on its motion to intervene or to provide membership information, so the court denied the motion to intervene. The Tribe failed to appear at the review hearing in December 1996. On February 13, 1997, the State filed a petition to terminate Amanda's parental rights pursuant to Iowa Code sections 232.116(1)(c), (d), (e), (g), (h), and (k) and the various fathers' rights pursuant to Iowa Code section 232.116(1)(b). The State also requested a hearing on the applicability of the Indian Child Welfare Act.

On March 20, 1997, the Rosebud Sioux filed a second motion to intervene, alleging ICWA applied because all four children were Indian children as defined in 25 U.S.C. § 1903(4).[1] At the March 24, 1997, termination of parental rights and review/permanency hearing, a representative of the tribe

---

1. Section 1903 provides in pertinent part:
   (4) "Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.

participated via telephone. The court continued the determination of the applicability of ICWA for the tribe to present further evidence. The court scheduled a hearing on the ICWA issue for April 18, 1997. The tribe failed to appear, but did submit evidence of the children's tribal membership. On April 21, 1997, the court ruled that the children were Indian children, ICWA applied to the case, and granted the tribe's motion to intervene. On April 23, 1997, the tribe filed a motion to transfer jurisdiction and dismiss the termination proceedings. A hearing on the motion was scheduled for the same day as the termination hearing, but the tribe failed to appear. The court continued the hearing to provide the tribe with sufficient time to prepare for trial. The termination hearing was rescheduled for June.

A member of the tribe appeared on the first day of the June termination proceeding, but failed to appear for the second day. The court denied the Tribe's motion to transfer jurisdiction and to dismiss. Following the hearing, the district court terminated Amanda's parental rights as well as those of the various fathers pursuant to the statutory grounds alleged in the petition. The court found Amanda had failed to cooperate with the numerous family services offered and she continued to deny her serious substance abuse problem. The court concluded the children's welfare would be in jeopardy if they were placed in Amanda's care. Amanda has appealed; neither the Rosebud Sioux nor the fathers have appealed.

### Scope of Review.

We review terminations of parental rights de novo. Iowa R.App. P. 4; *In re M.N.W. and P.B.S.W.*, 577 N.W.2d 874, 875 (Iowa App.1998). We may review the facts as well as the law and adjudicate a parent's rights anew. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). Our primary concern is the child's best interests, both immediate and long-term. *In re J.W.*, 528 N.W.2d 657, 659 (Iowa App.1995).

### The Indian Child Welfare Act, generally.

The Indian Child Welfare Act "seeks to protect the rights of the Indian child as an Indian and the rights of the Indian community and tribe in retaining its children in its society." H.R.Rep. No. 95–1386, 95th Cong., 2d Sess. 23 (1978), *reprinted* in 1978 U.S.C.C.A.N 7530, 7531. The Act:

> was the product of rising concern in the mid–1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.

*Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S.Ct. 1597, 1600, 104 L.Ed.2d 29, 36 (1989); *In re A.E.*, 572 N.W.2d 579, 581 (Iowa 1997). Congress acted in response to a perceived pattern of discrimination against native Americans in child custody proceedings. *In re J.R.H.*, 358 N.W.2d 311, 321 (Iowa 1984) (citing Barsh, *The Indian Child Welfare Act of 1978: A Critical Analysis*, 31 Hastings L.J. 1287, 1287–96 (1980)). ICWA evidences a concern too many Indian children were being removed from their homes and deprived of their cultural heritage. 25 U.S.C. § 1901(4).[2]

### Error preservation from the CINA proceedings and federal preemption.

■ Amanda does not challenge the termination on the six grounds cited by the juvenile court nor does she claim the State failed to comply with the expert testimony provisions of Indian Child Welfare Act in the termination proceeding. *See* 25 U.S.C. § 1912(f).[3] Rather, Amanda contends the

---

**2.** Congress stated its findings:

(4) that an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions.

**3.** This section provides:

> No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, *including testimony of qualified expert witnesses*, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. (Emphasis added).

juvenile court erred in terminating parental rights because it did not comply with the expert testimony provisions of ICWA pursuant to 25 U.S.C. § 1912(e) [4] in the underlying CINA proceedings.

The State challenges Amanda's ability to appeal issues not raised below. It asserts Amanda failed to raise the issue of expert testimony during the CINA proceedings, although she did argue ICWA was generally applicable. The State maintains section 1914 [5] does not preempt state preservation of error law and thus Amanda is barred from challenging the CINA proceedings because she did not appeal the adjudication, dispositional, or review orders.

In response to the issue Amanda raises and for the protection of the children and of the prospective adoptive parents from any subsequent proceedings to invalidate this termination, we address the issue whether our rules of error preservation are preempted under federal law. See In re J.W., 498 N.W.2d 417, 419 (Iowa App.1993).[6]

■ ICWA modifies Iowa case law and the provisions of Iowa Code chapter 232 concerning child custody. R.L.F., 437 N.W.2d at 601. However, we find nothing in ICWA which expressly or impliedly preempts a state's error preservation rules. See Fischer v. UNIPAC Serv. Corp., 519 N.W.2d 793, 799 (Iowa 1994) (express preemption is explicitly stated in the language of the statute); Brotherhood of Maintenance of Way Employees v. Chicago & North Western, 514 N.W.2d 90, 93 (Iowa 1994) (implied preemption is implicitly contained in the structure and purpose of the statute). Moreover, we are mindful that to allow a party to make untimely challenges to prior CINA proceedings would needlessly

delay permanency for the children. We view cases in which the statutory period for patience with a parent has expired with urgency. In re E.B.L., 501 N.W.2d 547, 551 (Iowa 1993); In re R.C., 523 N.W.2d 757, 760 (Iowa App.1994); J.L.W., 570 N.W.2d 778, 781 (Iowa App.1997). To have our procedural rules preempted by federal law, would serve no greater purpose under ICWA. Error preservation is part of this state's rules of trial and appellate procedure, contributing to an orderly and timely disposition of controversies. Our rules requiring litigants to preserve error for appeal do not conflict with any provision of ICWA or frustrate congressional policy. See Barske v. Rockwell Int'l Corp., 514 N.W.2d 917, 925 (Iowa 1994). Therefore, based on Iowa's requirement that a party must preserve error to have an issue reviewed on appeal, we find Amanda did not appeal from any of the CINA proceedings and the time for appeal has passed. She cannot challenge deficiencies in the CINA proceedings in this appeal. Failure to object "operates as a waiver of any improprieties in the testimony." In re R.L.F., 437 N.W.2d 599, 602 (Iowa App.1989).

### Triggering the requirement of expert testimony under ICWA.

■ For purposes of resolving when expert testimony is required in a CINA proceeding under 25 U.S.C. § 1912(e), we assume arguendo the State did not present such testimony. The State contends the juvenile court had no duty to apply ICWA to the proceedings when the tribe consistently failed to provide it with the necessary information to determine whether the children met the definition of "indian child." 25 U.S.C. § 1903(4). To understand why expert

---

4. This section provides:

No foster care placement may be ordered in such proceeding in the absence of a determination, supported by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. (Emphasis added).

5. Section 1914 allows challenges to state proceedings if the procedural requirements of ICWA are not followed.

Any Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian from whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action upon a showing that such action violated any provision of sections 1911, 1912, and 1913 of this title.

6. We note an attack on the termination in federal district court would be precluded by the doctrine of res judicata. Kiowa Tribe of Oklahoma v. Lewis, 777 F.2d 587, 590–92 (10th Cir. 1985).

testimony was not used, we review the procedural steps taken by the juvenile court. The record clearly reveals notice was sent to the Rosebud Sioux with multiple opportunities extended to the Tribe to present information on the children's status. The provisions of ICWA do not apply until the court determines the children are "Indian" as defined in ICWA. "[I]t is incumbent upon the party asserting applicability of ICWA to prove the child meets the criteria under ICWA." *M.N.W. and P.B.S.W.*, 577 N.W.2d at 875 (citing *In re A.G.-G.*, 899 P.2d 319, 321 (Colo. App.1995); *In re A.M.*, 235 Neb. 506, 455 N.W.2d 572, 573 (1990)). Indian tribes are the arbiters of their membership. *J.W.*, 498 N.W.2d at 422. "Formal membership requirements differ from tribe to tribe, as do each tribe's method of keeping track of its own membership." *In re J.L.M.*, 234 Neb. 381, 451 N.W.2d 377, 387 (1990) (quoting *Application of Angus*, 60 Or.App. 546, 655 P.2d 208, 212 (1982)).

Having failed to come forward with evidence the children qualified as "Indian," Amanda cannot now complain the juvenile court did not apply ICWA in the CINA proceedings. Until it is established on the record the child meets one or both of the definitional criteria, a parent or tribe does not qualify for protection under ICWA. *In re Maricopa County Juvenile Action No. A-25525*, 136 Ariz. 528, 667 P.2d 228, 232 (Ct. App.1983) (citing *Angus*, 655 P.2d at 210). The court continued proceedings on the applicability of ICWA to give the tribe every opportunity to present evidence, yet the tribe's response was minimal. Because the court could not make a determination the children qualified as "Indian," it could not determine whether ICWA applied. There can be no violation of ICWA until the court determines it applies to the proceedings. *Id.* at 232–33, 136 Ariz. 528.

### The effect of defects in the CINA Proceedings on terminations.

■ Amanda does not challenge the court's compliance with ICWA, including the testimony of the experts, at the termination hearing. Rather, she asserts defects in the CINA proceedings can invalidate the termination. We hold they cannot. The Supreme

Court of Montana addressed this issue in *In re M.E.M.*, 209 Mont. 192, 679 P.2d 1241 (1984). The mother appealed termination of her parental rights, asserting violations of ICWA in the temporary custody proceedings required invalidation of both the temporary and permanent custody proceedings. *Id.*, 209 Mont. 192, 679 P.2d at 1243. In discussing section 1914 of ICWA the court stated:

> This section provides for invalidation of an action which violates the provisions of the Act. Assuming that the violations alleged by appellant occurred, she would be entitled to invalidation of the temporary custody proceedings. However, this section does not provide for invalidation of a valid separate action because of an invalid prior one.

*Id.* The court also declined to address the alleged defects in the prior proceedings. *Id.* One year later, the Supreme Court of Alaska cited *M.E.M.* at length to answer the question, "were any procedural or jurisdictional errors rendered harmless by a subsequent, procedurally correct hearing?" *In re D.E.D.*, 704 P.2d 774, 782 (Alaska 1985). The court determined "even if the procedural and jurisdictional defects asserted by R.S. existed in the earlier temporary custody hearings, they were cured by the subsequent, procedurally correct final dispositional hearing." *Id.* We have followed Montana and Alaska in holding ICWA violations in temporary custody (CINA) proceedings do not invalidate a subsequent permanent custody (termination) proceeding. *In re J.W.*, 528 N.W.2d 657, 661 (Iowa App.1995). They are separate proceedings, arising from separate petitions. We find no justification to vary from that position.

■ We find, once the court determined on April 21, 1997, ICWA applied, it correctly followed ICWA procedure. The court allowed the tribe to intervene, but denied transfer of the proceedings for good cause. *See* 25 U.S.C. § 1911(b). At the termination hearing, the State presented testimony of Deb Kellen who specifically was recognized by the court, without objection, as an expert witness for purposes of the Indian Child Welfare Act. The expert's testimony "is to provide the court with knowledge of the so-

cial and cultural aspects of Indian life to diminish the risk of any cultural bias." *In re S.M.*, 508 N.W.2d 732, 734 (Iowa App.1993) (quoting *In re N.L.*, 754 P.2d 863, 867 (Okla. 1988)). Although the Act does not define "qualified expert witness," the Department of the Interior issued guidelines for state courts. *See* 44 Fed.Reg. 67584 (1979).[7] The guidelines are "not intended to have binding legislative effect." *Id.*; *In re L.N.W.*, 457 N.W.2d 17, 18 (Iowa App.1990). We agree with the court's determination. In addition, Judy Yellowbank, a tracker aide for DHS testified concerning Indian spiritual ceremonies and customs. We conclude the court carefully followed the provisions of ICWA in the termination proceeding. *See Holyfield,* 490 U.S. at 50–51, 109 S.Ct. at 1609, 104 L.Ed.2d at 47–48 (stating the provisions of ICWA are to be strictly construed and applied).

■ The evidence and testimony in the record before us convinces us termination of Amanda's parental rights is in the best interests of the children. She has continually failed to participate in or complete treatment for her substance abuse. She has not had personal visitation with her children since February 1996. Amanda has not maintained appropriate contact with DHS. Her abuse of alcohol and illegal drugs has led to abuse and neglect of her children. Additionally, several of the children suffer from the effects of her alcohol usage during pregnancy. We affirm the termination of Amanda's parental rights pursuant to Iowa Code sections 232.116(1)(c), (d), (e), (g), (h), and (k). As did the juvenile court, we find beyond a reasonable doubt that returning the children to Amanda's custody and care is likely to result in serious emotional or physical damage to the children. *See* 25 U.S.C. § 1912(f).

For the reasons set forth above, we affirm the juvenile court's termination of Amanda's parental rights to Jacob, Elise, Emilia, and Joshua.

**AFFIRMED.**

7.  The guidelines identify three types of experts:
    (i) A member of the Indian child's tribe who is recognized by the tribal community as knowledgeable in tribal customs as they pertain to family organization and childrearing practices.
    (ii) A lay expert witness having substantial experience in the delivery of child and family services to Indians, and extensive knowledge of prevailing social and cultural standards and childrearing practices within the Indian child's tribe.
    (iii) A professional person having substantial education and experience in the area of his or her specialty.
    44 Fed.Reg. 67,584, 67,593 (1979).