

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| | § | No. 08-18-00105-CV |
| | § | |
| | | Appeal from |
| IN THE INTEREST OF A.M., A CHILD. | § | |
| | | 65th District Court |
| | § | |
| | | of El Paso County, Texas |
| | § | |
| | | (TC # 20176DCM4167) |
| | § | |

## **O P I N I O N**

This appeal is from a judgment terminating the parental rights of Appellant, J.R.M., to her child, A.M.  We affirm.

### **FACTUAL SUMMARY**

J.R.M. is the biological mother of three-year-old A.M, who is a registered member of the Ysleta Del Sur Pueblo Tribe (the Tribe).[1]  In May 2017, Carissa Reeves, a social worker for the Tribe, became involved with J.R.M. following her release from a psychiatric hospital against the Tribe's recommendation.  Reeves met with J.R.M. to determine the services she was qualified to receive.  Based on the assessment, Reeves referred J.R.M. to attend individual therapy to treat her

---

[1]  Rule 9.8(b)(2) requires an appellate court to use an alias to refer to a minor in the opinion, and if necessary to protect the minor's identity, the minor's parent, or other family member.  TEX.R.APP.P. 9.8(b)(2).  The term alias means the person's initials or a fictitious name.  TEX.R.APP.P. 9.8(a).  We have opted to use initials.  We note that the record also refers to the Tribe by the names Ysleta Del Sur Pueblo Tigua Tribe and Tigua.  Any references to Tigua in the opinion necessarily refer to the Tribe.

mental health issues and outpatient drug treatment. J.R.M. went to the initial drug assessment but left without completing it. J.R.M. did not attend her appointment for individual therapy.

In June 2017, the Texas Department of Family and Protective Services became involved with J.R.M. and A.M. based on allegations of neglectful supervision, drug use, and mental health issues. An investigator for the Department, Carmelo Morales, met with J.R.M. for about two hours at the Tribe's Social Services Office. J.R.M. admitted that she was using marijuana, but she refused drug counseling or a mental health evaluation. During the interview, J.R.M. exhibited significant anxiety and shouted at Morales. She also began pulling her hair and scratching herself to such a degree that the Tigua Tribal Police transported her to the El Paso Psychiatric Center.

A.M. had lived with his maternal grandparents[2] most of his life and he was placed with them on June 20, 2017 where he remained throughout the case. The social workers with the Tribe agreed with this placement. Morales observed that A.M. was closely bonded and comfortable with his grandparents. J.R.M. refused to agree to a safety plan that would have limited her to supervised contact with A.M. Following her release from the Psychiatric Center, J.R.M. threatened to pick up A.M. from the grandparents' home and leave with him. Consequently, on June 20, 2017, the Department filed a petition seeking termination of J.R.M.'s parental rights, and the trial court conducted an adversary hearing on July 21, 2017. The trial court found that A.M. is a registered member of the Ysleta Del Sur Pueblo Tribe and appointed the Department as the temporary managing conservator of the child.[3] A.M. was formally placed with his maternal grandparents on June 20, 2017 and he remained with them throughout the case. Two days after the Department

---

[2] W.M. is an enrolled member of the Tribe and he is A.M.'s biological maternal grandfather. W.M.'s wife, M.M., is A.M.'s step-grandmother.

[3] J.R.M. did not take the steps necessary to cause the reporter's record from this hearing to be included in the appellate record.

filed the petition and the trial court signed the emergency order, the Department provided written notice to the Tribe of the pending custody proceeding involving A.M. The Tribe participated in the case at trial. In July 2017, a Department caseworker, Janette Rubio, met with J.R.M. and developed a service plan. Pursuant to the service plan, J.R.M. was required to obtain mental health treatment, to submit to random drug testing, to attend supervised visitation with A.M., to complete an OSAR drug and alcohol assessment, to obtain stable housing and employment, and to complete a psychological examination. Similar to her interaction with Morales, J.R.M. became upset during the meeting and shouted at her and other people who were present. J.R.M. signed the service plan but told Rubio that she had no intention of complying with its requirements. True to her word, J.R.M. did not comply with any of the plan requirements and she refused all efforts by Rubio to communicate with her whether by telephone, email, or in person at J.R.M.'s home. J.R.M. also refused to speak with the person who attempted to set up supervised visits with the child. Consequently, J.R.M. did not visit with A.M. at all and had no contact with him for a year.

A.M. lives on the reservation with his maternal grandparents. The evidence shows that A.M. is thriving and closely bonded with his grandparents who plan on adopting him. The grandparents maintain A.M.'s connection with the tribe by attending tribal activities with him. Witnesses testified that removing A.M. from the grandparents' home and returning him to his mother is likely to result in serious emotional or physical harm to the child.

The trial court found that the Department had proven the termination grounds under Section 161.001(b)(1)(D), (N), and (O) of the Texas Family Code by clear and convincing evidence, and that termination of J.R.M.'s parental rights was in the child's best interest. The court additionally found beyond a reasonable doubt that (1) the Department made active efforts to provide remedial services and rehabilitation programs designed to prevent the breakup of the Indian family and that

these efforts proved unsuccessful; and (2) the evidence, including testimony of a qualified expert witness, demonstrated that the continued custody of the child by J.R.M. is likely to result in serious emotional or physical damage to the child. The trial court appointed the Department as the permanent managing conservator of the child.

## ICWA VIOLATIONS

In her sole issue, J.R.M. argues that the termination order must be reversed and the case dismissed based on alleged violations of the Indian Child Welfare Act (ICWA). She does not challenge the sufficiency of the evidence supporting the termination grounds found by the trial court, the best interest finding, or the ICWA findings included in the final termination order.

### *Constitutionality of ICWA*

On October 4, 2018, a federal district court in the Northern District of Texas issued an order declaring that portions of the Indian Child Welfare Act, including its placement preferences, are unconstitutional for several reasons, including that it violates equal protection and improperly requires state agencies to apply federal standards to state claims. *See Brackeen v. Zinke*, Civil Action No. 4:17-cv-00868-O, --- F.Supp.3d ---, 2018 WL 4927908 (N.D. Tex., October 4, 2018). In the *Brackeen* case, foster and adoptive parents, and the states of Texas, Louisiana, and Indiana filed suit against the United States, United States Department of the Interior and its Secretary, Bureau of Indian Affairs (BIA) and its Director, BIA Principal Assistant Secretary for Indian Affairs, and the Department of Health and Human Services (HHS) and its Secretary seeking a declaration that Indian Child Welfare Act (ICWA) was unconstitutional. *Id.* The Department contends that the United District Court's order renders J.R.M.'s complaints moot, but the order does not indicate that the plaintiffs challenged the specific ICWA provisions at issue in this case. Further, the *Brackeen* case may be appealed and ICWA has previously been upheld by the United

States Supreme Court. *See Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989). Therefore, we will address the merits of the issues raised on appeal.

*Indian Child Welfare Act*

It is undisputed that A.M. is a member of the Tribe. Consequently, the requirements of ICWA apply to this case. *See* 25 U.S.C.A. § 1912(f); *In re V.L.R.*, 507 S.W.3d 788, 792 (Tex.App.--El Paso 2015, no pet.)(observing that ICWA applies to a termination of parental rights proceeding in a state court when the court knows or has reason to know that an Indian child is involved in a child custody proceeding). Congress enacted ICWA in 1978 in response to a rising concern over the consequences to Indian tribes, Indian families, and the children of abusive child welfare practices that resulted in the separation of Indian children from their families and tribes. *In re V.L.R.*, 507 S.W.3d at 792, c*iting Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 32, 109 S.Ct. 1597, 1599-1600, 104 L.Ed.2d 29 (1989). The Act is based on a policy that, where possible, an Indian child should remain in the Indian community. *Mississippi Band of Choctaw Indians*, 490 U.S. at 36, 109 S.Ct. at 1602; *In re V.L.R.*, 507 S.W.3d at 792. ICWA endeavors to accomplish this objective by establishing procedural and substantive standards for child custody proceedings in state court. *See Mississippi Band of Choctaw Indians*, 490 U.S. at 36, 109 S.Ct. at 1602; *In re V.L.R.*, 507 S.W.3d at 792.

*Termination of Parental Rights*

Parental rights may be involuntarily terminated through proceedings brought under Section 161.001 of the Texas Family Code. *See* TEX.FAM.CODE ANN. § 161.001. Under this provision, the petitioner must (1) establish one or more of the statutory acts or omissions enumerated as grounds for termination, and (2) prove that termination is in the best interest of the children. *See*

*id*. Under ICWA, termination of parental rights may not be ordered unless there is a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. 25 U.S.C.A. § 1912(f).

*The Emergency Hearing*

J.R.M. alleges that the Department violated ICWA because it failed to provide formal notice to the Tribe of the emergency *ex parte* hearing conducted by the trial court on June 20, 2017. Additionally, she contends that the emergency order entered on that date does not include the findings required by Section 1912(d) and (e)

Section 1912(a) requires that a party seeking termination of the parental rights to an Indian child provide notice of the proceeding to the child's tribe. 25 U.S.C.A. § 1912(a). It is undisputed that the Department filed the termination petition on June 20, 2017 and provided formal notice to the Department two days later in compliance with Section 1912(a). The Department did not, however, provide notice of the emergency *ex parte* hearing conducted by the trial court on June 20, 2017.

Section 1912(d) requires that a party seeking to effect a foster placement of or termination of parental rights of an Indian child must satisfy the court that active efforts were made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful. 25 U.S.C.A. § 1912(d). Under Section 1912(e), the trial court may not order foster care placement unless the court determines by clear and convincing evidence, including the testimony of a qualified expert witness, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. 25 U.S.C.A. § 1912(e). Even though the final order entered in this

- 6 -

case included the required ICWA findings under § 1912(d) and (e), J.R.M. argues that these findings had to be included in the emergency order entered on June 20, 2017, the amended emergency order entered on June 21, 2017, the temporary order after adversary hearing entered on July 26, 2017, the status order entered on August 11, 2017, and the permanency orders entered on December 8, 2017 and March 23, 2018.

We will first address whether ICWA's requirements apply to the initial emergency proceeding and order entered on June 20, 2017. Section 1922 of ICWA provides that:

> Nothing in this subchapter shall be construed to prevent the emergency removal of an Indian child who is a resident of or is domiciled on a reservation, but temporarily located off the reservation, from his parent or Indian custodian or the emergency placement of such child in a foster home or institution, under applicable State law, in order to prevent imminent physical damage or harm to the child. The State authority, official, or agency involved shall insure that the emergency removal or placement terminates immediately when such removal or placement is no longer necessary to prevent imminent physical damage or harm to the child and shall expeditiously initiate a child custody proceeding subject to the provisions of this subchapter, transfer the child to the jurisdiction of the appropriate Indian tribe, or restore the child to the parent or Indian custodian, as may be appropriate.

25 U.S.C.A. § 1922.

With its enactment of Section 1922, Congress expressly recognized a state's power to implement emergency removal and placement actions for Indian children. *State ex rel. Children, Youth and Families Department v. Marlene C.*, 149 N.M. 315, 248 P.3d 863, 872-74 (2011). Courts in several states have recognized that not all of the requirements of ICWA apply to temporary or emergency custody proceedings. *See Cheyenne River Sioux Tribe v. Davis*, 822 N.W.2d 62, 64-65 (S.D. 2012)(holding that full requirements of ICWA did not apply to a temporary custody proceeding); *State ex rel. Children, Youth and Families Department v. Marlene C.*, 248 P.3d at 872-74 (holding that New Mexico's ex parte and custody hearing stages are emergency proceedings to which the full requirements of ICWA do not apply); *D.E.D. v. State of*

*Alaska*, 704 P.2d 774, 779 (Alaska 1985)(holding certain notice requirements under ICWA inapplicable to emergency custody proceedings or emergency hearings); *State ex rel. Juvenile Department of Multnomah County v. Charles*, 688 P.2d 1354, 1358 (Or.Ct.App. 1984)(holding that emergency removal of a child is initially purely a state law matter not subject to all ICWA requirements); *Matter of the Welfare of J.A.S.*, 488 N.W.2d 332, 335 (Minn.Ct.App. 1992) (holding the testimony of a qualified Indian expert was not required at the initial detention hearing in the case since that hearing was an emergency removal); *In re S.B.*, 130 Cal.App.4th 1148, 30 Cal.Rptr.3d 726, 734-36 (Cal.Ct.App. 2005)(holding that not all provisions of ICWA apply to a detention/emergency removal hearing).

The record before us does not include a transcription of the emergency hearing conducted on June 20, 2017, but the trial court's order includes the following findings:

> [T]here is an immediate danger to the physical health or safety of the children[4] or the children have been the victims of neglect or sexual abuse and that continuation in the home would be contrary to the children's welfare; and

> there is no time, consistent with the physical health or safety of the children for a full adversary hearing, and reasonable efforts consistent with the circumstances and providing for the safety of the children, were made to prevent or eliminate the need for removal of the children.

Given Section 1922's directive that nothing in ICWA shall prevent the emergency removal of an Indian child when necessary to prevent imminent physical damage or harm to the child, we conclude that the requirements of Section 1912(a), (d), and (e) did not apply to the emergency removal of the child. *See Cheyenne River Sioux Tribe*, 822 N.W.2d at 64; *D.E.D. v. State of Alaska*, 704 P.2d at 779; *Matter of the Welfare of J.A.S.*, 488 N.W.2d at 335.

---

[4] The case originally involved two children, A.M. and X.M. X.M. was placed with his father and the Department dismissed its petition with respect to J.M.

*No ICWA Findings in Temporary Orders*

J.R.M. next contends that the termination order should be reversed because the trial court failed to make ICWA findings supported by the testimony of an Indian expert in each of the temporary orders entered following the emergency removal of the child. J.R.M. cites no authority in support of her argument that alleged non-compliance with ICWA at these stages of the proceeding could invalidate the final termination order or result in dismissal of the entire case.

Section 1914 of ICWA provides that a parent "may petition any court of competent jurisdiction to invalidate [a foster care placement or termination] upon a showing that such action violated any provision of sections 1911, 1912, and 1913 . . . ." 25 U.S.C.A. § 1914. The Montana Supreme Court and the Iowa Court of Appeals have addressed arguments similar to the one raised by J.R.W. and have held that alleged violations of ICWA at temporary legal custody proceedings does not invalidate a termination order or permanent custody order. *See In the Interest of M.E.M., Jr.*, 209 Mont. 192, 679 P.2d 1241, 1243 (1984) and *In the Interest of J.W.*, 528 N.W.2d 657, 661 (Iowa App. 1995).

In the Montana case, the appellant alleged multiple violations of ICWA occurred in the temporary custody proceedings and argued these violations required invalidation of both the temporary and permanent custody proceedings. *In re M.E.M.*, 679 P.2d at 1243. The appellant did not argue on appeal that ICWA was violated in the permanent custody proceedings, but she asserted that the trial court improperly relied upon the invalid prior proceedings in terminating her parental rights. *Id.* The Montana Court of Appeals rejected this argument because Section 1914 does not provide for invalidation of a valid separate action because of an invalid prior one. *Id.* Further, the court noted that the trial court did not rely upon the prior temporary custody

proceedings in terminating the appellant's parental rights and the termination order was based on the evidence offered at the final hearing. *Id.*

The Iowa Court of Appeals considered and rejected a similar argument in *In the Interest of J.W.*, 528 N.W.2d 657, 661 (Iowa App. 1995). Like the argument made by J.R.M., the appellant in *J.W.* argued that the termination order should be reversed because the trial court violated Section 1912(e) when it placed the children in temporary foster care and continued their placement at subsequent temporary hearings without the testimony of an Indian expert witness. *In re J.W.*, 528 N.W.2d at 661. The Iowa Court of Appeals noted that while Mother would be entitled to invalidation of the initial temporary custody proceedings if a violation of ICWA had been shown, Section 1914 "does not provide for invalidation of a valid separate action because of an invalid prior one." *In re J.W.*, 528 N.W.2d at 661, *quoting In re M.E.M.*, 679 P.2d at 1243. The Iowa Court of Appeals concluded that the final termination order included the necessary findings and those findings were based on expert testimony offered at the termination hearing. *In re J.W.*, 528 N.W.2d at 661.

We agree with the Montana Supreme Court and Iowa Court of Appeals conclusion that the alleged defects in the temporary orders do not invalidate the final termination order. The final termination order is supported by expert witness testimony and it includes the necessary ICWA findings. J.R.M. has not challenged these findings on appeal. Accordingly, we overrule J.R.M.'s sole issue and affirm the termination order.

December 14, 2018

                               ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.