# IN THE COURT OF APPEALS OF IOWA

No. 15-1981
Filed January 27, 2016

**IN THE INTEREST OF M.S.,**
**Minor Child,**

**J.S., Father,**
    Appellant.
_____


Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, District Associate Judge.


A father appeals from the order terminating his parental rights. **AFFIRMED.**


Jon Narmi, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine Miller-Todd, Assistant Attorney General, for appellee State.

Roberta Megel of the State Public Defender's Office, Council Bluffs, for minor child.


Considered by Danilson, C.J., and Vogel and Potterfield, JJ.

**DANILSON, Chief Judge.**

The father appeals from the juvenile court order terminating his parental rights to his child, M.S.[1] The father maintains the State failed to make reasonable efforts for reunification and erred by not determining the Indian Child Welfare Act's applicability during the child-in-need-of-assistance proceedings. The father also maintains the State has not proved by clear and convincing evidence that the statutory grounds for termination have been met, that termination is in M.S.'s best interests, and that no permissive factor weighs against termination.

Because the father raises the State's alleged failure to make reasonable efforts for the first time on appeal and he concedes the Indian Child Welfare Act is not applicable, we decline to consider the merits of these issues. The father had the potential to be the child's caretaker and had periods of successful caretaking. Unfortunately, he ultimately failed to fulfill his potential. Before the termination hearing, the father had positive drug tests; failed to perform additional drug tests; absented himself from caretaking duties and seemingly disappeared on at least two occasions; failed to complete therapy; faced probation revocation proceedings; and allowed the mother contact with the child several times contrary to the DHS safety plan. Because M.S. could not be returned to the father's care at the time of the termination hearing, termination of the father's parental rights is in M.S.'s best interests, and no permissive factor weighs against termination, we affirm the juvenile court's order terminating the father's parental rights.

---

[1] The mother's parental rights were also terminated. She does not appeal.

**I. Backgrounds Facts and Proceedings.**

M.S. was born in June 2013 and immediately tested positive for opiates. The Iowa Department of Human Services (DHS) became involved with the family at that time, but M.S. remained in her parents' care. The mother completed a substance abuse evaluation and had the following diagnoses: alcohol dependence in full sustained remission, marijuana dependence in full sustained remission, and opiate dependence. She was recommended to complete an extended outpatient program.

On August 19, 2013, M.S. was adjudicated a child in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2), (n), and (o) (2013).[2]

M.S. was removed from the mother's care on September 9, 2013, after the mother relapsed. M.S. remained in the father's care. Throughout the pendency of the proceedings, the mother has had ongoing issues with homelessness, abuse of prescription pain medications not prescribed to her, as well as noncompliance with chemical dependency treatment and mental health

---

[2] Iowa Code sections 232.2(6)(c)(2), (n), and (o) provide:
> 6. "Child in need of assistance" means an unmarried child:
> . . . .
> c. Who has suffered or is imminently likely to suffer harmful effects as a result of any of the following:
> . . . .
> (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.
> . . . .
> n. Whose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care.
> o. In whose body there is an illegal drug present as a direct and foreseeable consequence of the acts or omissions of the child's parent, guardian, or custodian. The presence of the drug shall be determined in accordance with a medically relevant test as defined in section 232.73.

treatment. Additionally, the mother was inconsistent in attending scheduled visits with M.S.

In July 2014, DHS learned M.S. had not been to her regular daycare in almost three weeks. The caseworker and the family services provider attempted to make contact with the father but were unable to reach him. There were concerns the father was leaving M.S. home with the mother, who was only supposed to have supervised visits. DHS ultimately learned the father had taken M.S. to her maternal grandmother's home in California and had left her there for a visit. He intended for M.S. to stay with her grandmother for a few weeks and then he was going to bring her back to Iowa. In the meantime, the father admitted he was seeing the mother while M.S. was out of state.

The mother and father attended a family team meeting on July 18, 2014. At the meeting, the father admitted the mother "had been around lately." Additionally, he admitted that he was unable or unwilling to keep the mother away. Both parents signed a safety plan agreeing that M.S. would stay at the paternal grandfather's home until it was decided otherwise. The mother also agreed that she would only see M.S. with a family service provider present. Following the meeting, the father moved into the paternal grandfather's home.

On November 19, 2014, DHS sought and received an ex-parte removal order of M.S. from the father's care. During the week of November 10, M.S.'s daycare contacted DHS to report that she had not attended since November 7. When the service provider visited the grandfather's home to speak to the father, the provider learned that the whereabouts of the father were unknown. The father's employer reported that he had missed work for approximately one week

and DHS was unable to locate him. Additionally, during the same period, the caseworker was informed there was a new picture posted on social media of the mother pushing M.S. in a stroller. On November 17, the father's employer was able to contact the mother, who reported the father was not with her at that time but that he would be returning shortly. The father did not return the employer's call. When DHS called the mother in order to speak to the father, she did not answer or return messages. On November 20, 2014, after the removal order was filed, the father brought M.S. to the family services provider so she could be placed in foster care. It is unclear from the record where the father was during the approximately two weeks DHS could not reach him.

A review modification and permanency hearing was held December 10, 2014. Following the hearing, the court ordered the father to submit to random drug screens, attend individual therapy, and sign releases for DHS to obtain documentation regarding his probation in the state of Nebraska. The caseworker learned that the father was on probation in Nebraska for driving while intoxicated and had been for some time, although he had not shared the information with DHS.

As of February 2015, the father had obtained a full-time job. He had returned to residing with his father, but hoped to obtain his own residence for himself and M.S. He was receiving and consistently attending three or four visitations with M.S. each week. He was also attending therapy. There was, however, ongoing concern regarding the relationship between the father and mother and whether the father could make appropriate decisions with regards to M.S.'s safety.

In April 2015, a visit was cancelled when the caseworker arrived at the father's residence with M.S. and the father appeared to be intoxicated. The caseworker believed the apartment smelled of marijuana and noticed a mostly empty bottle of whiskey on the father's floor.

On June 10, 2015, the father tested positive for marijuana. He then missed three of his next four scheduled drug tests. On September 22, 2015, he tested positive for methamphetamine. The father had stopped attending therapy during the summer as well. After missing three visits, his file was closed, and it was unclear if and when he would be able to restart therapy. Additionally, the father violated the terms of his probation, and a bench warrant was issued for his arrest. DHS informed the father that visits with M.S. would be suspended until he dealt with the arrest warrant. Visits were suspended on July 29, 2015, and did not resume until September 24, 2015—after the father turned himself in.

A termination hearing was held on October 9 and 12, 2015. Visits had only recently resumed. The father was still awaiting his probation revocation hearing, but he testified he believed he would be sentenced to house arrest for three to nine days as a result of the violation. At the time of the hearing, the father was living in a safe apartment with two bedrooms. He claimed he was attending Alcoholics Anonymous at least weekly although he admitted consuming two beers one night approximately three weeks before the hearing. He admitted he had accidently consumed marijuana and acknowledged the positive drug test, but he denied ever using methamphetamine and maintained that the test result was in error. At the hearing, the guardian ad litem recommending terminating the father's parental rights, stating:

I do have sympathy for [the father]. That is true. [M.S.] is bonded to him, and it's a very close relationship, but I think there needs to come a time when you have to balance her need for permanency against her bond with her father, and it's time for her to know that she's in a place in her life where she's going to be for the rest of her life. She's got 16 more years before she's 18, so I would ask the Court to terminate parental rights because it's time for [M.S.] to achieve permanency.

On November 6, 2015, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e), (h), and (i) (2015). The father appeals.

## II. Standard of Review.

We conduct a de novo review of termination of parental rights proceedings. *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011). Although we are not bound by the juvenile court's findings of fact, we do give them weight, especially in assessing the credibility of witnesses. *Id.* An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is considered "clear and convincing" when there are no serious or substantial doubts as to the correctness of conclusions drawn from it. *Id.*

## III. Discussion.

### A. Error Preservation.

On appeal, the father maintains the State failed to make reasonable efforts to reunify him with M.S. In support of this contention, the father relies on the fact that he "desired as much visitation as possible" with M.S., that he asked his caseworker to have—but never received—a drug patch placed on him following his positive test for methamphetamine, and that his father has not been

"looked at for placement." However, the juvenile court repeatedly found that reasonable efforts were being made, and the father failed to raise the issue with the juvenile court until closing arguments at the termination hearing. *See In re L.M.W.,* 518 N.W.2d 804, 807 (Iowa 1994) ("While the state had the obligation to make the efforts, the parents have a responsibility to demand services *prior* to the termination hearing. Challenges to the plan for reunification should have when the plan was entered." (emphasis added)). The father also maintains that error was preserved because he and his attorney objected to recommendations that the permanency goal be changed from reunification to adoption. The father's general disagreement with the permanency goals does not meet his "obligation to demand other, different, or additional services prior to a permanency or termination hearing." *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). "[V]oicing complaints regarding the adequacy of services to a social worker is not sufficient. A parent must inform the juvenile court of such challenge." *In re C.H.,* 652 N.W.2d 144, 148 (Iowa 2002). Additionally, "we will not review a reasonable efforts claim unless it is raised prior to the termination hearing." *In re T.S.*, 868 N.W.2d 425, 442 (Iowa Ct. App. 2015).

We decline to consider the father's claims that the State failed to make reasonable efforts to reunify him with K.S.

**B. Indian Child Welfare Act.**

The father also maintains the juvenile court erred when it determined that the Indian Child Welfare Act did not apply to M.S. at the same time his parental rights where terminated rather than during the CINA proceeding. He does not contest the court's determination that the Act is not applicable, nor does he

identify any injury or harm caused by the timing of the determination.[3] Iowa Code section 232B.4(4) requires that the "determination of the Indian status of the child shall be made as soon as practicable . . . ." However, even if the court could have made the determination during the CINA proceedings, such a defect cannot invalidate the termination. *See In re J.D.B.*, 584 N.W.2d 577, 582 (Iowa Ct. App. 1998) ("We have [held] ICWA violations in temporary custody (CINA) proceedings do not invalidate a subsequent permanent custody (termination) proceeding.").

Because the father concedes the Indian Child Welfare Act is not applicable and any alleged defect cannot invalidate the termination, we decline to consider the father's claim that the juvenile court should have made the determination sooner.

**C. Statutory Grounds.**

The father maintains the State did not prove the statutory grounds for termination have been met by clear and convincing evidence. The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(e), (h), and (i) (2015). When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707.

The juvenile court may terminate a parent's parental rights pursuant to section 232.116(1)(h) when the child is three years old or younger, has been adjudicated a child in need of assistance, has been removed from the parent's

---

[3] In the summer of 2013, the parents indicated there may be some Sioux heritage in the family. The State sent letters to eleven tribes, all of which rejected M.S. as a member or potential member of the tribe.

custody for at least six of the last twelve months, and cannot be returned to the parent's custody at the time of the termination hearing. Here, the father only challenges the juvenile court's finding that M.S. could not be returned to his care at the time of the hearing. In the alternative, the father maintains the juvenile court should have granted him additional time to work toward reunification.

At the time of the termination hearing, the father had only recently begun having visits with M.S. again after a six-week hiatus. He was unable to have visits while he "dealt with" the bench warrant for his arrest in Nebraska due to his violation of probation. Additionally, he was awaiting his probation revocation hearing. The father had recently tested positive for use of marijuana and use of methamphetamine as well as missing three out of four drugs tests during the summer of 2015. He had stopped attending therapy, although he admitted that attending was beneficial to him, and he was unsure when he would be able to restart since his file had been closed due to lack of attendance. Additionally, the father maintained that he was regularly attending Alcoholics Anonymous to deal with his issues of abusing alcohol, but he had no proof. He admitted he drank "a couple beers" one night approximately three weeks before the hearing. We acknowledge that the father had a safe and appropriate home in which to care for M.S. and appeared to have the financial means to take care of her. However, we agree with the juvenile court that M.S. could not be returned to his care at the time of the termination hearing.

In the alternative, the father maintains he should be allowed an additional six months to work towards reunification with M.S. pursuant to Iowa Code section 232.104(2)(b). M.S. was approximately twenty-eight-months old at the time of

the termination hearing and had been involved with DHS for the entirety of her life. Although she was in the father's care for the first seventeen months, she had been placed with a foster family for eleven months leading up to the hearing. The father appeared to backslide in the months leading up to the hearing, testing positive for illegal drugs for the first time during the pendency of the case, violating the terms of his probation and facing revocation, and failing to attend therapy. Additionally, the father had not proved he could keep M.S. safe from the mother, who was still admittedly taking prescription medications that were not prescribed to her. We cannot say that an extension of time would result in the child being able to return to the father's care within six months.

**D. Best Interests.**

The father maintains terminating his parental rights was not in M.S.'s best interests. We acknowledge that the father has a safe home to care for M.S. in, M.S. is bonded to the father, and there are no safety or parenting concerns during the supervised visits. However, we agree with the guardian ad litem and the juvenile court that permanency is in M.S.'s best interests. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and the "need for a permanent home")). At the time of the hearing, M.S. was twenty-eight months old and had been involved with DHS her entire life. She had been out of the father's care for the last eleven months, and there was no indication she could be returned to his care soon. The father is not currently able to provide permanency and stability for M.S., and she should not be forced to wait any longer. *See In re J.C.*, 857 N.W.2d 495, 502

(Iowa 2014) ("Courts are obliged to move urgently to achieve the ends that will best serve the child's interests because childhood does not await the wanderings of judicial process." (Internal quotation marks omitted)).

**E. Permissive Factors.**

The father maintains that termination of his parental rights was not necessary because the paternal grandmother may adopt M.S. and because M.S. and the father are so bonded that termination would be detrimental to M.S.

First, section 232.116(3)(a) provides that the court need not terminate when "[a] relative has legal custody of the child." The paternal grandmother did not have legal custody at the time of the termination hearing, and so it is not applicable. Section 232.116(3)(c) provides that the court need not terminate when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Although multiple people testified that M.S. and the father share a bond, there is no evidence that termination would be detrimental to M.S. It is clear the father loves M.S., but "our consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes" the father's inability to provide for and protect M.S. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). We do not find that termination would be detrimental to M.S. based solely on the parent-child relationship, and no other permissive factor weighs against termination.

**IV. Conclusion.**

Because the father raises the State's alleged failure to make reasonable efforts for the first time on appeal and he concedes the Indian Child Welfare Act

is not applicable, we decline to consider the merits of these issues. Because M.S. could not be returned to the father's care at the time of the termination hearing, termination of the father's parental rights is in M.S.'s best interests, and no permissive factor weighs against termination, we affirm the juvenile court's order terminating the father's parental rights.

**AFFIRMED.**