# IN THE COURT OF APPEALS OF IOWA

No. 14-1665
Filed January 14, 2015

**IN THE INTEREST OF J.B.,**
**Minor Child,**

**S.M., Mother,**
Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

A mother appeals from the order terminating her parental rights. **AFFIRMED.**

Ronald E. Langford of Langford Law Office, L.L.C., Des Moines, for appellant mother.

Magdalena Reese of Cooper, Goedicke, Reimer & Reese, West Des Moines, for father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee State.

Michelle R. Saveraid of the Youth Law Center, Des Moines, for minor child.

Considered by Danilson, C.J., and Doyle and Tabor, JJ.

**DANILSON, C.J.**

A mother appeals[1] the termination of her parental rights pursuant to Iowa Code section 232.116(1)(d), (f), and (i) (2013). She challenges a finding made in the child-in-need-of-assistance (CINA) adjudication order, which was entered on February 27, 2013. She also challenges evidentiary rulings made during the termination trial. Because statutory grounds exist to terminate the mother's parental rights, and because termination is in the best interests of the child, we affirm. The child has long been absent from the family home, and the mother continues to associate with individuals of suspect character and recently has been subject to criminal prosecution for a drug offense.

**I. Background Facts.**

J.B. was born in Iowa in September 2006. In 2009, his mother and maternal grandmother moved with J.B. to Georgia. In August 2011, the mother sent J.B. back to Iowa to live with his paternal grandmother so the child could attend school here. In February 2012, the mother moved to North Carolina, assisting her sister with the sister's newborn. She made telephone calls to the child about once per week while he was living in Iowa. She remained in North Carolina until February 2013.

On October 28, 2012, J.B.'s father, who was apparently then residing in his mother's house in Iowa where the child resided, was arrested for violation of probation and drug and weapons-related offenses, which brought the child to the attention of the department of human services (DHS).

---

[1] The father's parental rights were also terminated. He did not appeal.

A removal order was entered on January 14, 2013, and the child was adjudicated a CINA on February 27, 2013. In the CINA adjudication order, the court found:

> [p]lacement outside the parental home is necessary because continued placement in or a return to the home would be contrary to the child's welfare due to father's criminal charges involving drug dealing, child's report of father's [and] relatives using in child's home, Mother's abandonment of the child for past 14 months, her failure to provide for child's basic needs and protection. Further, father of mother's other child also has drug trafficking convictions. Court finds Mother knew of Father's drug use when she left the child in his mother's care.

The child was placed in the DHS's custody and in the paternal grandmother's care, with the condition that all persons living in the residence would submit to urinalysis (UA), and other placement would be considered if any were found to have submitted a "dirty" UA. The mother did not appeal.

The mother returned to her mother's home in Georgia in February 2013. On March 7, she filed a motion to reopen the adjudicatory hearing and modify the order, contending her "interests were not fully represented" and the child should be placed with her in Georgia. The mother participated in the March 27, 2013 disposition hearing by telephone. Following the contested disposition proceeding, the juvenile court denied the mother's motion to reopen the record, finding "a meaningful adjudication was held."

The court also specifically found:

Mother failed to provide a hair stat as previously [ordered] because she believed it was "unfair." Mother was informed missed hair stats and UAs would be considered positive. The evidence presented shows Mother has a history of associating with criminals and has a history of domestic violence which she failed to report. Mother failed to complete the social history so little is know[n] of needed services.

The court further found out-of-home placement continued to be necessary because of "Mother's lack of insight into the criminals she chooses to associate with, her abandonment of this child, and history of unresolved domestic violence issues." The mother did not appeal.

The mother continued to have telephone contact with the child. The child has received services through DHS and the juvenile court, including therapy since March 2013 with psychologist Kyle Kuhlman, who diagnosed the child with an adjustment disorder and possible attention deficit hyperactivity disorder (ADHD). Later consultation with other mental health professionals supported the diagnosis of ADHD.

The mother appeared at the September 23, 2013 review hearing. The court found out-of-home placement continued to be necessary, noting "mother's failure to safely supervise child, mother exposing child to domestic violence and illegal drug activity, mother has not been involved in child's life for two years." The mother thereafter relocated to Iowa and—beginning in October 2013—attended the child's therapy sessions. In a December 9, 2013 letter to DHS social worker Austin Munoz, Kuhlman reported the child had "a strong and positive bond with his mother and his paternal grandmother" and noted the understanding that DHS was recommending increased visit times with the mother. In November 2013, the mother began participating in outpatient mental health therapy with a "treatment plan consist[ing] of identifying and establishing healthy and safe relationships in her family's life and in her personal relationships

and developing additional ways to cope with stress." In December, she began receiving domestic violence services from Children & Families of Iowa.

A permanency hearing was scheduled and began on January 16, 2014. The hearing was continued and set to reconvene in April. However, the child's guardian ad litem filed a petition to terminate parental rights on January 16, and the parties agreed to combine the permanency and termination proceedings.

During a traffic stop on March 20, 2014, the mother was arrested for possession of a bag of marijuana found under her seat. When she was in the patrol car, she attempted to discard a small plastic bag of marijuana in the rear seat. She admitted to police she had smoked marijuana with the occupants of the vehicle, two of whom had extensive criminal backgrounds. The mother was taken into custody and, from the jail the mother telephoned a woman (she later identified the woman as her aunt, Meegan Lee) whose first question was "did you get rid of it?" The woman told the mother to go to the toilet in the corner not visible by surveillance cameras, wrap "it" in toilet paper, and flush it away. The mother called the woman back after she went through the booking procedure and told the woman to go get the mother's other child from her grandmother's house, assuring the woman that the grandmother was deaf and would not hear her.

The permanency hearing/termination trial was held on April 10, May 9, May 19, and July 7, 2014. The recordings of the jail phone calls were introduced at the permanency/termination trial after the mother had testified she had left her other child in her aunt's care on the night she was arrested. When asked what she was going to wrap in toilet paper and dispose of, the mother invoked the Fifth Amendment. The mother testified that on at least three separate dates, she and

the father of her other child were involved in violent encounters, but insisted J.B. was not "exposed" to domestic violence because he was in another room. Evidence at trial indicated J.B. was having behavioral control difficulties at school. The mother continued to resist having him placed on medication for ADHD, although Kuhlman reported the child "demonstrated improvements with attention, focus, and work completion at school" during a one-week trial period on medication. On May 19, the mother acknowledged the child had not been able to attend a full day of school for three to four weeks due to his acting-out behaviors.

The juvenile court found the mother lacked credibility and that she "minimizes her substance abuse and domestic violence issues." The court terminated her parental rights pursuant to Iowa Code section 232.116(1)(d), (f), and (i). The mother appeals.

**II. Scope and Standard of review.**

Our review of termination proceedings is de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

**III. Discussion.**

In *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010), the supreme court explained that we conduct a three-step analysis of termination of parental rights. We first determine if a ground for termination exists under section 232.116(1). "If a ground exists, the court may terminate a parent's parental rights." *P.L.*, 778 N.W.2d at 39. If a ground for termination exists, the second step in the analysis is to determine if termination is in the child's best interests. *Id.* Statutorily we are to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical,

mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Third, before terminating a parent's parental rights, the court must consider if any of the exceptions contained in section 232.116(3) allow the court not to terminate. *P.L.*, 778 N.W.2d at 39.

We may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

Under section 232.116(1)(d) termination may be ordered if the court finds that both of the following have occurred:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The mother challenges the juvenile court's finding that she abandoned the child, which was made during the CINA proceedings. The challenge to the finding of abandonment could have and should have been made by appeal from the dispositional order entered after the CINA adjudication and it cannot be raised here. *See In re Marriage of Guyer*, 522 N.W.2d 818, 822 (Iowa 1994) (noting that principles of res judicata preclude a court from relitigating an issue that has previously been decided); *In re J.B.*, 584 N.W.2d 577, 581 (Iowa Ct. App. 1998) (finding mother's failure to appeal from any of the CINA proceedings waived deficiencies in those proceedings).

The court found the mother had been offered services (including, among others, parenting classes; therapy for child and parent; visitation; and Family Safety, Risk, and Permanency Services), but "despite the services offered, Mother continues to associate [with] unsafe persons and has engaged in criminal behavior while with those individuals. Mother's recent behavior was after the termination petition was filed, with her knowing what was at stake regarding the possible termination of her parental rights."

Disregarding any issue of abandonment, section 232.116(1)(f) provides that termination may be ordered when there is clear and convincing evidence that a child four years of age or older who has been adjudicated a CINA and removed from the parents' care for at least the last twelve consecutive months cannot be returned to the parents' custody at the time of the termination hearing. The mother does not challenge the court's termination of her parental rights pursuant to section 232.116(1)(f), except to the extent of the evidentiary objections. Consequently, we need not discuss the first step in our analysis. *See P.L.*, 778 N.W.2d at 40. We stress, however, the child has been out of his parents' custody since January 2013. In *In re J.C.*, ___ N.W.2d ___, ___, 2014 WL 7338505, at *5-6 (Iowa Dec. 26, 2014), our supreme court recently emphasized the need for prompt resolution of juvenile proceedings:

> A permanency hearing "for a child subject to out-of-home placement" must "be held within twelve months of the date the child was removed from the home." Iowa Code § 232.104(1)(a)(1); *see also id.* § 232.104(1)(a)(2) (requiring a permanency hearing within thirty days if "the court has waived reasonable efforts requirements under section 232.102"). Our statutes and court rules reflect the understanding that promptly resolved juvenile proceedings best serve children's interests.

> Courts are obliged to move urgently to achieve the ends that will best serve the child's interests because childhood does not "await the wanderings of the judicial process."

The statutory timeframe has been exceeded. The child's need for permanency must be acknowledged.

Turning to the mother's evidentiary objections, the juvenile court admitted the police report of the mother's arrest pursuant to Iowa Code section 232.96(6).[2] We reject the mother's current challenge that the police report was not self-authenticating because that contention was not made to the juvenile court and, therefore, is not properly before us. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

The mother contends the juvenile court erred in admitting the recordings of her jail telephone conversations and the June 14, 2014 FSRP report. Generally, evidentiary rulings are reviewed for an abuse of discretion. *In re N.N.*, 692 N.W.2d 51, 54 (Iowa Ct. App. 2004) (noting that although scope of review was de novo, evidentiary rulings were reviewed for an abuse of discretion). However, the mother provides no specific argument for either claim. We therefore do not consider them. *See State v. Mann,* 602 N.W.2d 785, 788 n.1

---

[2] Section 232.96(6) states:

> A report, study, record, or other writing . . . made by . . . a peace officer . . . relating to a child in a proceeding under this division is admissible notwithstanding any objection to hearsay statements contained in it provided it is relevant and material and provided its probative value substantially outweighs the danger of unfair prejudice to the child's parent, guardian, or custodian. The circumstances of the making of the . . . writing . . . including the maker's lack of personal knowledge, may be proved to affect its weight.

(Iowa 1999) (stating that "random mention of an issue, without elaboration or supporting authority, is insufficient to raise issue for appellate court's consideration"); *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 689 (Iowa 1994) (refusing to consider an issue when party cited no authority and offered no substantial argument in support of the issue). Moreover, she does not explain how either of the asserted errors impacts termination of her parental rights pursuant to section 232.116(1)(f).[3]

The mother's current argument is that the paternal grandmother is an unsuitable guardian. This is the same person to whom the mother entrusted the care of her child in 2011 and in whose care the child remains. The grandmother is currently complying with the expectations of the juvenile court and has participated in services with the child. She is willing to provide a permanent home for the child. Giving primary consideration to "the child's safety, . . . the best placement for furthering the long-term nurturing and growth of the child, and . . . the physical, mental, and emotional condition and needs of the child," Iowa Code § 232.116(2), we conclude termination of the mother's parental rights and adoption will best provide J.B. with the permanency the child desperately needs and deserves.

The mother does not assert any—and this court finds no—exception contained in section 232.116(3) weighs against termination of parental rights. We therefore affirm.

**AFFIRMED.**

---

[3] The mother contends the court erroneously found she abused marijuana, citing section 232.116(1)(*l*). The juvenile court did not terminate her rights under that provision.