# IN THE COURT OF APPEALS OF IOWA

No. 17-0573
Filed June 7, 2017

**IN THE INTEREST OF R.M.,**
**Minor Child,**

**T.B., Mother,**
        Appellant,

**I.M., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A mother and father separately appeal from the juvenile court's order terminating their parental rights to their child, who is a member of an Indian tribe. **AFFIRMED ON BOTH APPEALS.**

Deborah L. Johnson of Deborah L. Johnson Law Office, P.C., Altoona, for appellant mother.

Nicholas A. Bailey of Bailey Law Firm, P.L.L.C., Altoona, and Jane K. Odland of Odland Law Firm, P.L.L.C., Newton, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Meegan M. Keller of Keller Law Office, P.C., Altoona, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

A mother and father separately appeal from the juvenile court's order terminating their parental rights to their child, R.M., who is a member of the Seminole Nation of Oklahoma.[1]  They both argue (1) the State failed to prove the statutory grounds for termination; (2) termination is not in their child's best interests; (3) the juvenile court should have granted them an additional six months to work toward reunification with their child; and (4) exceptions to termination exist because the child is placed with a relative and shares a bond with her parents.  Upon our de novo review, we affirm.

## I.     Background Facts and Proceedings

The family first came to the attention of the Iowa Department of Human Services (DHS) in September 2015, due to allegations the parents were using illegal drugs while caring for their child.  Subsequently, concerns were raised about domestic violence between the parents.  In October, the juvenile court entered an order removing the child from the parents' custody and placing the child with her maternal grandmother.[2]  In December, the court adjudicated R.M. a child in need of assistance (CINA).

In October 2016, the court held a combined permanency and termination hearing.  At the hearing, the father testified he had a lengthy history of using illegal drugs, had never provided a clean drug screen for DHS, had last used illegal drugs three months prior, and had not completed any substance-abuse

---

[1] It is undisputed R.M. is an Indian child as defined in the Indian Child Welfare Act (ICWA).  *See* Iowa Code § 232B.3 (2016).

[2] The record shows the child has lived with the maternal grandmother since June 2015, when she was approximately one month old, due to the parents' instability and the domestic violence between them.

treatment program. He further testified he did not provide financial assistance for the child to the maternal grandmother because the grandmother had not requested it. Additionally, the father admitted he had criminal charges pending against him at that time and he had not held stable employment during the pendency of the CINA case. The mother testified she also had a history of using illegal drugs and had never completed the recommended substance-abuse treatment. She admitted she did not obtain the court-ordered mental-health evaluation. The mother also had not had stable housing or employment during the underlying CINA action. Finally, both parents admitted R.M. could not be returned to their care and custody at the time of the termination hearing.

In November, the juvenile court terminated the mother's and the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h). Both parents filed motions to enlarge or amend the court's factual findings and conclusions of law, which the court denied. The mother and father then appealed the court's termination order.

In February 2017, the supreme court reversed the juvenile court's order and remanded the case "for presentation of expert testimony that will provide the juvenile court with knowledge of the social and cultural aspects of Indian life to diminish the risk of any cultural bias in the termination decision." (Citation omitted.)

In March, the juvenile court held a hearing on the remanded issue. An Indian child welfare worker and case worker for the Seminole Nation of Oklahoma testified as an expert witness regarding the social and cultural aspects of Indian life, and in particular the Seminole Nation of Oklahoma. The

caseworker testified none of the facts or allegations in this case reflected any cultural bias toward Indians or this specific tribe. She further testified DHS had provided reasonable and active efforts to keep the family intact, the tribe's rules and code of laws would support a termination of parental rights in this case, and return of the child to the parents' custody would risk severe emotional or physical harm to the child. Additionally, the caseworker testified the child's placement with her maternal grandmother is culturally appropriate, consistent with the tribe's customs and law, compliant with ICWA, and supported by the tribe. She testified the establishment of a guardianship was not preferred due to the child's young age.

The juvenile court subsequently entered an amended and reissued order terminating the parents' parental rights pursuant to section 232.116(1)(e) and (h). The mother and father separately appeal.

## II. Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). When a court terminates parental rights on more than one ground, we may affirm the order on any of the statutory grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). "Evidence is considered clear and convincing 'when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence."'" *In re M.W.*, 876 N.W.2d at 219 (alteration in original) (citation omitted).

"However, termination of the parental rights of an Indian child shall not be ordered unless supported by evidence beyond a reasonable doubt that 'the continued custody of the child by the child's parent or Indian custodian is likely to result in serious emotional or physical damage to the child.'" *In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011) (quoting Iowa Code § 232B.6(6)(a)). "The evidence must also include the testimony of a qualified expert witness as defined in section 232B.10." *Id.*

### III.    Analysis

"Our review of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d at 219. First, we must determine whether the State established the statutory grounds for termination by clear and convincing evidence. *See* Iowa Code § 232.116(1); *In re M.W.*, 876 N.W.2d at 219. Second, if the State established statutory grounds for termination, we consider whether termination is in the child's best interests under section 232.116(2). *See In re M.W.*, 876 N.W.2d at 219–20. Finally, we consider whether any exceptions under section 232.116(3) weigh against termination. *See id.* at 220.

"In addition to this analysis, Iowa Code chapter 232B sets forth Iowa's [ICWA], which extends further protections to Indian families and tribes." *In re D.S.*, 806 N.W.2d at 465. ICWA has a dual purpose: "to protect the best interests of a child and preserve the Indian culture." *Id.* ICWA applies even when "there is no evidence the child has been raised in an Indian culture." *Id.*; *see also* Iowa Code § 232B.5(2) ("A state court does not have discretion to determine the applicability of . . . this chapter to a child custody proceeding

based upon whether an Indian child is part of an existing Indian family."). Still, our primary consideration remains the best interests of the child. *In re D.S.*, 806 N.W.2d at 465.

### A. Statutory Grounds

The parents do not dispute the grounds for termination have been proved under Iowa Code section 232.116(1)(h),[3] and the record clearly shows these statutory requirements have been met. At the time of the termination hearing, R.M. was under the age of three. The juvenile court ordered R.M. removed from her parents' custody in October 2015, and there have been no trial periods at home. R.M. was adjudicated CINA in December 2015. Additionally, both parents admitted at the hearing that R.M. could not be returned to their care at that time and instead requested the court grant them an additional six months to achieve reunification or establish a guardianship with the child's maternal grandmother. Furthermore, the caseworker for the child's tribe testified the return of the child to the parents' custody would risk severe emotional or physical harm to the child.

Instead, the parents both contend the State did not make active efforts to reunify the child with her parents. *See* Iowa Code § 232B.5(19) ("A party seeking . . . termination of parental rights over an Indian child shall provide evidence to the court that active efforts have been made to provide remedial services and

---

[3] Under Iowa Code section 232.116(1)(h), the court may terminate parental rights if the court finds the child (1) is three years old or younger; (2) has been adjudicated CINA; (3) has been removed from the physical custody of the parent for at least six of the last twelve months, or the last six consecutive months and any trial period at home has been less than thirty days; and (4) cannot be returned to the parent's custody at the time of the termination hearing.

rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful."). The parents did not raise this issue to the juvenile court until after the termination order was entered and the supreme court remanded the case. The juvenile court did not rule on this issue in its amended and reissued order, and the parents did not file a motion seeking a ruling on this issue. Therefore, these claims are not preserved for our review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also In re J.D.B.*, 584 N.W.2d 577, 581 (Iowa Ct. App. 1998) ("[N]othing in ICWA . . . expressly or impliedly preempts a state's error preservation rules.").

Accordingly, we affirm the juvenile court's order terminating the father's and the mother's parental rights to their child pursuant to Iowa Code section 232.116(1)(h).

### *B. Best Interests*

The parents next contend termination of their parental rights was not in their child's best interests under Iowa Code section 232.116(2). Even if a statutory ground for termination is met under section 232.116(1), a decision to terminate must still be in the best interests of the child under section 232.116(2). *In re M.W.*, 876 N.W.2d at 224.

In determining whether termination of a parent's parental rights is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa

Code § 232.116(2). "Insight for the determination of a child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *In re A.B.*, 815 N.W.2d 764, 778 (Iowa 2012) (quoting *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000)).

The record shows both parents have a history of substance abuse that they failed to address during the year the underlying CINA case was open. The parents did not obtain stable employment or housing, and neither parent took any steps to resolve their domestic-violence, anger-management, and mental-health issues. The parents never progressed beyond supervised visits with their child and their participation in visits was sporadic—the parents often showed up late to the visits or left early when they did attend them. They provided minimal financial assistance to the maternal grandmother for R.M.'s care. Additionally, the father had several criminal charges pending against him at the time of the termination hearing.

We cannot ask this child to continuously wait for her parents to become stable. *See In re D.W.*, 791 N.W.2d at 707; *see also In re A.B.*, 815 N.W.2d at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). R.M. has been in her maternal grandmother's home since she was approximately one month old. She's doing well in her care, and the grandmother wishes to adopt the child. Furthermore, the caseworker for the child's tribe testified placement with her grandmother is culturally appropriate and supported by the tribe and that a

guardianship was not preferred due to the child's young age. Termination is in this child's best interests.

### C. Permissive Factors

"Once we have established that the termination of parental rights is in the [child's] best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d at 225. Both parents assert the juvenile court should not have terminated their respective parental rights because they each share a bond with their child and the child is placed with a relative.

Iowa Code section 232.116(3)(a) provides "[t]he court need not terminate the relationship between the parent and child if . . . [a] relative has legal custody of the child." Section 232.116(3)(c) provides a court may decide not to terminate a parent's parental rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The application of section 232.116(3) is permissive, not mandatory. *In re A.M.,* 843 N.W.2d at 113. "The court has discretion, based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship." *In re D.S.,* 806 N.W.2d at 475.

After reviewing the record in its entirety, we agree with the juvenile court that any exception to termination should not be applied in this case. *See In re C.K.,* 558 N.W.2d at 174 ("An appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child."). As noted above, R.M. is placed with her

maternal grandmother and is thriving in her care. The grandmother is willing to adopt her. R.M. is very young, and she needs and deserves permanency and stability. *See In re A.B.*, 815 N.W.2d at 777 ("It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010))).

Furthermore, any bond that exists between the parents and R.M. is limited, considering the child's young age and the time she has spent out of her parents' care. Indeed, the father admitted at the termination hearing he did not have a "significant" bond with his child. The parents did not take advantage of the offered visits, often cancelling visits with their child or failing to confirm visits. When the parents did attend visits, they were often late, left early, or caused a visit to end early due to their volatile behaviors. Thus, we conclude no permissive factors under section 232.116(3) apply to preclude termination in this case.

### D.  Additional Time

Finally, the parents argue the juvenile court should have granted their requests for additional time to work toward reunification with their child. Under Iowa Code section 232.104(2)(b), a court may authorize a six-month extension if it determines "the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period."

We must now view this case with a sense of urgency. *See In re C.B.*, 611 N.W.2d at 495. "[A]t some point, the rights and needs of the children rise above

the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). Based upon our de novo review of the record, we are not persuaded the need for removal would no longer exist at the end of six months. *See* Iowa Code § 232.104(2)(b).

## IV. Conclusion

We have carefully reviewed the record, the briefs of the parties, and the juvenile court's ruling. Upon our de novo review, we conclude the State proved the statutory grounds for termination of the father's and the mother's parental rights and termination is in the child's best interests. We further find no permissive factors weighing against termination exist so as to preclude termination. Finally, the juvenile court correctly denied any request for additional time to work toward reunification. Accordingly, we affirm.

**AFFIRMED ON BOTH APPEALS.**