# IN THE COURT OF APPEALS OF IOWA

No. 17-1412
Filed November 8, 2017

**IN THE INTEREST OF B.R.,**
    **Minor Child,**

**D.R., Father,**
    Appellant.

_____

    Appeal from the Iowa District Court for Linn County, Susan F. Flaherty, Associate Juvenile Judge.

    A father appeals the termination of his parental rights. **AFFIRMED.**

    David R. Fiester of the Law Office of David R. Fiester, Cedar Rapids, for appellant.

    Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.

    Carrie K. Bryner, Cedar Rapids, guardian ad litem for minor child.

    Considered by Danilson, C.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his child,[1] B.R, who was two years old at the time of the May 2017 termination-of-parental-rights hearing. The father claims that the State failed to prove the statutory grounds for termination, that he should have been granted additional time, and that termination of his parental rights is not in the child's best interests. Upon our de novo review, s*ee In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014), we affirm the juvenile court's order.

The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (h) (2017). When the juvenile court terminates parental rights on more than one ground, we may affirm the order on any ground we find supported by clear and convincing evidence in the record. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to address the ground for termination under section 232.116(1)(h). This section provides termination may be ordered when there is clear and convincing evidence that a child age three or under, who has been adjudicated a child in need of assistance (CINA) and removed from the parents' care for at least six of the last twelve months or the last six consecutive months, cannot be returned to the parents' custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h). The first three elements of paragraph (h) are not in dispute; rather, the father asserts on appeal that the State failed to prove the fourth element. *See id.* § 232.116(1)(h)(4) ("There is clear and convincing evidence that the child cannot be returned to the

---

[1] Although the mother's parental rights were also terminated, she is not a party to this appeal.

custody of the child's parents as provided in section 232.102 at the present time."). To satisfy its burden of proof, the State must establish "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance." *See id.* § 232.102(5)(2); *accord In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). The threat of probable harm will justify termination of parental rights, and the perceived harm need not be the one that supported the child's initial removal from the home. *See In re M.M.*, 483 N.W.2d 812, 814 (Iowa 1992). "At the present time" refers to the time of the termination hearing. *A.M.*, 843 N.W.2d at 111.

The father does not really mount a challenge to the State's proof of element four, conceding in his brief that he "was incarcerated and clearly could not resume custody of B.R." Indeed, the record is clear that the father was incarcerated at the time of the termination hearing, would be for the foreseeable future, and, therefore, was not in a position to have custody of the child then or in the near future. But, this was only one of the factors supporting the juvenile court's conclusion the child could not be returned to the father at the time of the termination hearing without subjecting the child to the adjudicatory harm.

The juvenile court found,

> [The father] has a significant criminal history and is currently in prison, with a tentative discharge date in 2023. [The father]'s criminal history includes domestic assaults, use of weapons, multiple thefts, and burglary. [The father] also has a lengthy history of substance abuse. During the course of the proceedings regarding [B.R.], he has continued to use methamphetamine and heroin and has been unwilling to engage in substance-abuse treatment. [The father]'s relationship with [the mother] has been violent and dysfunctional. [The father] has assaulted [the mother] on multiple occasions and inflicted significant injury. [The mother] has, at times, expressed a great deal of fear of [the father] and

separated from him. Currently, [the mother] is clearly stating her desire to continue her relationship with [the father] when he is released from prison. . . .

[The father] has not been willing to participate in services offered by the [Iowa] Department of Human Services, including supervised visitation, drug testing, substance-abuse evaluation and treatment, or domestic violence counseling. [The father] has had the ability to see [B.R.] weekly since the dispositional hearing, under the supervision of the Department of Human Services. He has not attended any of the offered visits. [The father] was arrested on September 24, 2017, and has remained in jail, now prison, continuously since that time. . . .

. . . .

[B.R.] could not be returned to the care of either parent at this time or anytime in the reasonably near future. . . . [The father] continues to be incarcerated. He has a lengthy history of criminal activity and repeated incarcerations. He has a significant history of substance abuse and, although he is currently sober due to being in prison, there is no history of [the father] being able to maintain sobriety for any significant period of time outside of incarceration. [The father] and [the mother] intend to resume their relationship when he is released from prison. If [B.R.] were in the care of her parents, she would be at ongoing risk of harm due to domestic violence. Additionally, [the father]'s tendency to act violently/aggressively creates an imminent risk of harm to any child who resides with him.

The court further found, "If [B.R.] were returned to the care of either or both parents, she would clearly continue to be a child in need of assistance and continue to require the protection of this court. It is very unlikely that this situation would change in the foreseeable future." After our de novo review of the record we agree with the juvenile court that there is clear and convincing evidence the fourth element of section 232.116(1)(h) is satisfied.

The father argues that "had the [juvenile] court granted additional time it is possible that [the father] could achieve parole and be able to return to care for B.R." The father did not testify at the termination-of-parental-rights hearing and did not request any additional time. Therefore, his claim is not preserved for our

review. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."); *see also In re K.C.*, 660 N.W.2d at 38 ("Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal.").

Even if we were to ignore the error-preservation issue, the father's claim would fail. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re P.L.*, 778 N.W.2d 33, 41 (2010). Children require permanency. *See In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). As we have stated numerous times, children are not equipped with pause buttons. *See, e.g.*, *In re T.J.O.*, 527 N.W.2d 417, 422 (Iowa Ct. App. 1994) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable."). "The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems." *In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987); *see also In re D.J.R.*, 454 N.W.2d 838, 845 (Iowa 1990) ("We have long recognized that the best interests of a child are often not served by requiring the child to stay in 'parentless limbo.'" (citation omitted)). While the law requires a "full measure of patience with troubled parents who attempt to remedy a lack of parenting skills,"

this patience has been built into the statutory scheme of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). Our supreme court has explained that "the legislature, in cases meeting the conditions of [the Iowa Code], has made a categorical determination that the needs of a child are promoted by termination of parental rights." *In re M.W.*, 458 N.W.2d 847, 850 (Iowa 1990) (discussing Iowa Code section 232.116(1)(e) (1989)). At some point, as is the case here, the rights and needs of the child must rise above the rights and needs of the parent. *See In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). The public policy of the state having been legislatively set, we are obligated to heed the statutory time periods for reunification. *See C.B.*, 611 N.W.2d at 494. The father's tentative discharge date is August 22, 2023, and his first parole hearing would not be any earlier than May 9, 2018. A grant of additional time is not warranted as any more time in limbo is contrary the child's best interests.

The father argues termination is not in the best interests, "in part because of the bond between the child and her parents." His argument implicates one of the discretionary exceptions set forth in section 232.116(3). *See* Iowa Code § 232.116(3)(c) ("The court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). The juvenile court found "[B.R.]'s relationship with her father is minimal due to the extended period of time that he has been absent from her life." The court concluded, "[The father] has not maintained significant or meaningful contact with the child over the time since the child was removed from parental custody," and that "[B.R.] has no substantial bond with

her father." We agree the exception provided in section 232.116(3)(c) does not apply here.

The juvenile court found, "[B.R.] is an adoptable child. She is young and personable. She has been placed with the same relative caretakers throughout these proceedings. She is integrated into this home." The court concluded,

> Neither parent has demonstrated the ability to safely resume care of the child or to address the issues that led to her removal. . . . [B.R.] needs permanency, security, a safe home, adequate care and supervision, and nurturing. Her parents are not providing that for her. . . . Upon review, therefore, the court finds that termination of parental rights and placement in an adoptive home is in her best interest. Continuing [B.R.] in temporary placement while the parents continue to attempt to stabilize their lives is more detrimental to [B.R.] than termination of parental rights and adoptive placement, particularly if [B.R.] is adopted by her current caretakers.

We agree with the juvenile court's assessment and that termination of the father's parental rights is in the best interests of B.R.

The father also asserts the child's best interests would have been served by allowing the mother a few more months to have the child in her care under DHS supervision. First, the mother's parental rights were terminated, and she has not appealed. Second, the father has no standing to make such a claim. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007); *In re D.G.*, 704 N.W.2d 454, 460 (Iowa Ct. App. 2005) (stating that one parent cannot assert facts or legal positions pertaining to the other parent). We reject the father's assertion.

Although acknowledging he did not exercise visits with the child through DHS prior to his incarceration, the father complains that he desired visitation with the child after he was incarcerated and his requests were denied. That denial

was made by the juvenile court in a dispositional order, a "'final,' appealable order." *In re Long*, 313 N.W.2d 473, 476 (Iowa 1981). We have held that a parent must appeal the dispositional order to challenge deficiencies from any of the CINA proceedings to preserve the alleged errors for our review. *See In re J.D.B.*, 584 N.W.2d 577, 581 (Iowa Ct. App. 1998) (stating where a mother did not appeal from any of the CINA proceedings and the time for appeal had passed, she could not challenge deficiencies in the CINA proceedings in her appeal of the termination of her parental rights). Error was not preserved on this issue since the father did not appeal from the dispositional order.

For all the above reasons, we affirm the juvenile court's order terminating the father's parental rights to his child B.R.

**AFFIRMED.**