# IN THE COURT OF APPEALS OF IOWA

No. 24-0076
Filed August 7, 2024

**IN THE INTEREST OF M.W.T. and C.W.T.,**
  **Minor Children,**

**T.D., Mother,**
  Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, Judge.

A mother appeals the termination of her parental rights, drawing on provisions of the Iowa Indian Child Welfare Act. **REVERSED AND REMANDED.**

Johnathan Sears of Clark & Sears Law, PLLC, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Mackenzie L. Moran, Assistant Attorney General, for appellee State.

Lynn Vogan of Juvenile Public Defender's Office, Des Moines, attorney and guardian ad litem for minor children.

Considered by Greer, P.J., and Badding and Buller, JJ.

**BULLER, Judge.**

This appeal turns on Iowa's Indian Child Welfare Act (Iowa ICWA) and two specific provisions that impose requirements that differ from the legal standards applied to other child-welfare proceedings. *See* Iowa Code ch. 232B (2023). The mother appeals the termination of her parental rights concerning "active efforts" to preserve the family and the record made with a "qualified expert witness" on whether the pertinent tribe's "culture, customs, and laws" would support termination. Based on the plain language of Iowa ICWA, we find the record deficient on the "culture, customs, and laws" question, and we reverse and remand.

## I.    Background Facts and Proceedings

The Iowa Department of Health and Human Services (HHS) removed M.W.T. (born 2016) and C.W.T. (born 2018) from the mother's custody in early 2022. The mother has a history of prior cases with HHS that resulted in the termination of her rights to older children.

Without dwelling too long on the facts, given the narrow legal issues presented on appeal, HHS's concerns about the mother included her violation of a no-contact order, failure to supervise the children, methamphetamine and other controlled-substance abuse by the mother and her paramour, failure to provide adequate dental and mental-health care for the children, and physical abuse reported by the children after removal. A criminal matter arose out of these concerns, and the mother pled guilty to two counts of child endangerment, aggravated misdemeanors in violation of Iowa Code section 726.6(1)(a) (2022), for creating a substantial risk to the children's physical, mental, or emotional health

or safety. The no-contact order flowing from the convictions remained in effect as of the termination trial, limiting the mother's contact with the children to HHS-supervised visits.

Paternity testing ultimately resulted in tribal contact and a determination that Iowa ICWA applied to both children. The juvenile court directed HHS to provide "active efforts" toward reunification, among other Iowa ICWA requirements.

By the time of the termination trial, the mother had made limited but ultimately unsuccessful efforts to address HHS's concerns. Following the recommendations of HHS, the assistant county attorney, and the children's guardian ad litem, the juvenile court terminated the mother's parental rights under Iowa Code section 232.116(1)(d), (f), (g), (i), and (*l*) (2023). The court also terminated the father's parental rights on multiple grounds including consent.

Only the mother appeals, and she only raises issues under Iowa ICWA. We review de novo. *In re J.D.B.*, 584 N.W.2d 577, 580 (Iowa Ct. App. 1998).

## II. Discussion

The mother's two Iowa ICWA challenges concern "active efforts" under Iowa Code section 232B.5(19) and the testimony of a "qualified expert witness" about the tribe's "culture, customs, and laws" under section 232B.10(2). We address the second challenge first, finding it dispositive.

Iowa ICWA requires specific testimony from a "qualified expert witness" about the tribe's "culture, customs, and laws" at the termination trial:

> In considering whether to involuntarily place an Indian child in foster care or to terminate the parental rights of the parent of an Indian child, the court shall require that qualified expert witnesses with specific knowledge of the child's Indian tribe testify regarding that tribe's family organization and child-rearing practices, and regarding

> *whether the tribe's culture, customs, and laws would support the placement of the child in foster care or the termination of parental rights on the grounds that continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child.*

Iowa Code § 232B.10(2) (emphasis added). The mother asserts on appeal that, while the expert at her trial met the foundational requirements set forth in the Code, the expert's testimony did not address the italicized portion above, concerning the tribe's "culture, customs, and laws" on termination. In interpreting this provision, we have held that the qualified expert is not required to recommend termination but must address whether "the tribe's culture, customs, or laws would support termination on that ground." *In re D.S.*, 806 N.W.2d 458, 471 (Iowa Ct. App. 2011). In other words, the testimony need not address whether the expert personally supports termination, but instead whether the tribe's culture, customs, or laws would generally support termination when a child faces a likelihood of serious physical or emotional damage when left in a parent's custody. *See id.*

The expert in this case, Shirley Bad Wound, gave brief testimony that did not directly or indirectly address whether the tribe's culture, customs, or laws would generally support termination. The bulk of Bad Wound's testimony addressed whether the children could enroll in the tribe in the future, which does not bear on the "culture, customs, or laws" inquiry under section 232B.10(2). While there was some brief discussion of a "tribal customary adoption," Bad Wound was not asked about and did not explain the standards for such an adoption or how it compared to termination based on the children's welfare generally or the likely risk of serious physical or emotional damage specifically.

The juvenile court also recognized this deficiency in its order, and rather than paraphrase we reproduce the analysis in full:

> Mother's counsel points out the qualified expert witness must also provide testimony of whether the tribe[']s culture and laws would support termination of parental rights on the grounds that continued custody of the child by a parent is likely to result in serious emotional or physical damage. In his written closing, he argues the County Attorney failed to elicit such testimony.
>
> Court agrees the County Attorney did not directly ask about this. However, Ms. Bad Wound's testimony related to another question provided the required answer, even though it was not directly solicited. The County Attorney asked Ms. Bad Wound whether there was a way in their tribal culture to do a "tribal adoption." This is a relatively new mechanism where the identified tribe and state court work together, instead of having either the state or tribe have exclusive jurisdiction, which allows the tribe [to] make[ ] determinations regarding "termination" but also allows for genuine permanency for the children by way of adoption. This collaboration allows the children to maintain the tribal connection and allows for the adoptive family to receive financial support through the state to support the children.
>
> Ms. Bad Wound indicated there is a way in their culture to do a tribal adoption but went on to state that in similar cases to these children, there were additional benefits to the adoptive family, so the Tribe support the more traditional termination proceeding in state court. Ms. Bad Wound[']s answer regarding tribal adoption provided the necessary evidence that the Tribe's culture and laws would support termination. Ms. Bad Wound testified, "I believe that they are in a good place, and if their parents were able to do what they had to do to get their children returned, then we would be in a different court setting." Given parents['] lack of progress, the Tribe was in support of termination.
>
> Ms. Bad Wound testified the children would still be eligible for enrollment and stressed the importance of the children being exposed to and learning about their Tribal culture, laws and customs. The children's current custodians are supportive of continued relationship between the children and the Tribe.

(Line breaks added for readability.) We agree with the juvenile court that the assistant county attorney did not elicit any testimony directly responsive to the "culture, customs, or laws" inquiry.

But we cannot agree with the juvenile court's read-between-the-lines approach to finding the answer. The requirements of section 232B.10(2) are specific, and the statute's provisions must be "strictly construed" under our published case law. *In re C.A.V.*, 787 N.W.2d 96, 99 (Iowa Ct. App. 2010) (citation omitted). Under this standard, we conclude cobbling together other aspects of an expert's testimony to unrelated questions is not permitted. We also note Bad Wound did not actually testify "the Tribe was in support of termination," as the juvenile court found. Because Bad Wound's generalized testimony regarding tribal culture did not address the ultimate question of whether the tribe's culture, customs, and laws supported termination, we conclude the statute was not satisfied and the juvenile court erred in granting the petition for termination of parental rights.

We do not have abundant case law discussing the remedy for failure to satisfy section 232B.10(2), but we have "reversed and remanded" in an unpublished decision where no qualified expert witness testified. *See In re D.W.*, No. 00-1677, 2001 WL 710205, at *5 (Iowa Ct. App. June 13, 2001). We conclude that remedy is also appropriate here, with the caveat that this opinion is not intended to displace the status quo from the underlying child-in-need-of-assistance proceedings or any existing no-contact orders. Last, because we have reversed and remanded, we decline to address the mother's active-efforts claim. *See id.* ("Because we have decided the case must be reversed and remanded, we need not address the remaining issues [the parent] raises on appeal.").

**REVERSED AND REMANDED.**